**Robin MAGEE, Plaintiff,**

v.

**TRUSTEES OF THE HAMLINE UNIVERSITY, MINNESOTA; Donald Lewis, in his individual capacity; David Titus, in his individual capacity; and John Does, 1–5, Defendants.**

Civil No. 11–949 (JRT/AJB).

United States District Court,
D. Minnesota.

March 29, 2013.

Albert T. Goins, Sr., Goins Law Offices, Ltd., Minneapolis, MN, and Damon L. Ward, Ward Law Group, Minneapolis, MN, for plaintiff.

Maurice G. Jenkins, Jackson Lewis LLP, Southfield, MN, V. John Ella, Jackson Lewis LLP, Minneapolis, MN, Sara Gullickson McGrane and Grant T. Collins, Felhaber Larson Fenlon & Vogt, PA, Minneapolis, MN, for defendants Trustees of the Hamline University, Minnesota and Donald Lewis.

David L.D. Faith and Michelle S. Grant, Dorsey & Whitney LLP, Minneapolis, MN, for defendant David Titus.

## MEMORANDUM OPINION & ORDER

JOHN R. TUNHEIM, District Judge.

This action arises out of the termination of Plaintiff Robin Magee's employment by the Hamline University School of Law. The matter came before United States Magistrate Judge Arthur J. Boylan on Magee's motion to amend her complaint. Additionally, Defendant David Titus and Defendants Trustees of the Hamline University ("Hamline") and Donald Lewis (collectively, the "Hamline Defendants") filed motions to dismiss the complaint for failure to state a claim. In a October 15, 2012 Order and Report and Recommendation ("R & R"), the Magistrate Judge granted Magee's motion to amend her complaint in part, allowing her to add new factual allegations, but denied Magee's

motion to the extent it sought amendment to add a new defendant and new claims because such amendments would be futile. The Magistrate Judge also recommended that the Court grant Defendants' motions to dismiss Magee's federal claims and decline to exercise supplemental jurisdiction over Magee's remaining state law claims. Before the Court are Magee's and Lewis's objections to the October 15, 2012 Order and R & R. For the reasons explained below, the Court will affirm the Magistrate Judge's order, and adopt the R & R in its entirety.

## BACKGROUND [1]

### I. MAGEE'S TERMINATION

Plaintiff Robin Magee was a tenured law professor at Hamline University School of Law. (Compl. ¶ 1, Apr. 15, 2011, Docket No. 1.) Magee taught classes on policing, covering topics such as police misconduct and race issues in the criminal justice system. (Id. ¶¶ 8–9.)

In 2007, Magee wrote a letter to the editor of the St. Paul Pioneer Press criticizing a Ramsey County court's decision not to investigate allegations of racism related to the jury in a high-profile case involving the alleged killing of a St. Paul police officer. (Id. ¶ 10.) Magee's letter was published in the Pioneer Press. (Id.) Defendant David Titus, a police officer with the City of St. Paul wrote a response to Magee's letter that was published on the St. Paul Police Federation ("SPPF") [2] website. (Id. ¶ 11.) In his response, Titus questioned Magee's "fitness to teach" and stated "I hope Professor Magee confines her race baiting and cop-hating to her newspaper submissions and keeps it out of the classroom." (Id.) Titus then contacted

Hamline, allegedly with the intent to have Magee fired in retaliation for her critical editorial. (Id. ¶ 12.)

After the publication of Titus' response, Defendant Donald Lewis became Dean of the Hamline University School of Law. (Id. ¶ 13.) Lewis allegedly began working together with Titus and other St. Paul police officers to terminate Magee. (Id.)

In 2009, Magee was charged with multiple counts of state tax law violations, and was suspended from her teaching position at Hamline. (Compl. ¶ 14; Proposed Am. Compl. ¶ 47, May 14, 2012, Docket No. 36.) After she was convicted of misdemeanor tax law violations in February 2011, Hamline initiated termination proceedings against Magee. (Compl. ¶¶ 16–17.) Magee contends that this termination was a concerted effort between Lewis and St. Paul police, and ultimately effected "to please police and to prevent her from teaching about police misconduct, and otherwise to restrain her speech, and as retaliation for past speech criticizing government." (Id. ¶¶ 17–18.)

### II. PROCEDURAL HISTORY

On April 15, 2011, Magee filed a complaint alleging violations of 42 U.S.C. § 1983 by the Hamline Defendants and Titus. (Id. ¶¶ 19–24.) Magee alleges that Defendants retaliated against her because she had "exercised her right to free speech, to criticize government," and violated her First Amendment right to petition the government for redress of her grievances. (Id. ¶ 21.) Magee also brings claims for intentional interference with contract against Lewis, and a claim for breach of contract against Hamline. (Id. ¶¶ 25–31.)

---

1. The Court recites the facts only to the extent necessary to rule on the present objections. A more complete recitation of the facts can be found in the R & R.

2. The SPPF is a labor union representing St. Paul police officers. Titus was the SPPF president during the time period referenced in the complaint. (Proposed Am. Compl. ¶¶ 14–15, May 14, 2012, Docket No. 36.).

On April 20, 2012, Titus and the Hamline Defendants filed motions to dismiss the complaint under Federal Rule Civil Procedure 12(b)(6) for failure to state a claim. (Def. Titus' Mot. to Dismiss, Apr. 20, 2012, Docket No. 20; Hamline Defs.' Mot. to Dismiss, Apr. 20, 2012, Docket No. 24.)

On May 11, 2012, Magee filed a motion requesting leave to amend her complaint. (Mot. to Amend, May 11, 2012, Docket No. 32.) On May 14, 2012, Magee filed a copy of her proposed amended complaint. (Ex., May 14, 2012, Docket No. 36.) Magee's proposed amended complaint adds almost one hundred new factual allegations. (*Id.*) The proposed amended complaint also adds the St. Paul Police Federation ("SPPF") as a defendant, and alleges a violation of 42 U.S.C. § 1983 as well as intentional interference with an employment contract against the SPPF. (*Id.* ¶¶ 124–32.) Additionally, the proposed amended complaint asserts new causes of action against the existing defendants, including intentional interference with an employment contract against Titus (*id.* ¶¶ 131–32), and promissory estoppel, breach of a duty of good faith and fair dealing, and defamation against Hamline, (*id.* ¶¶ 133–52).

## ANALYSIS

## I. MOTIONS TO DISMISS

### A. Standard of Review

Upon the filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed.R.Civ.P. 72(b)(2); *ac-*

*cord* D. Minn. LR 72.2(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed.R.Civ.P. 72(b)(3).

▇▇▇ Here, the Magistrate Judge issued a recommendation applying Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion to dismiss brought under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a " 'claim to relief that is plausible on its face.' " *See, e.g., Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir.2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility[,]" and therefore must be dismissed. *Id.* (internal quotation marks omitted). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation marks omitted). Therefore, to survive a motion to dismiss, a complaint must provide more than " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action. . . .' " *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).[3]

---

**3.** The Magistrate Judge granted Magee's motion to amend her complaint to the extent it sought to add new factual allegations. Therefore, in recommending that the Court grant Defendants' motions to dismiss, the Magistrate Judge properly considered the new fac-

tual allegations contained in Magee's proposed amended complaint. The Court will do the same. In her objections, Magee suggests that the Magistrate Judge "did not give full legal effect" to her new factual allegations. (Pl.'s Objections at 2, Oct. 29, 2012, Docket

## B. Section 1983 Claims

■ "Section 1983 imposes liability for certain actions taken 'under color of 'law that deprive a person 'of a right secured by the Constitution and laws of the United States.'" *Dossett v. First State Bank*, 399 F.3d 940, 947 (8th Cir.2005) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). Therefore, in order "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). The Hamline Defendants and Titus both bring motions to dismiss Magee's claims for violation of 42 U.S.C. § 1983, arguing that they are not actors under color of state law for purposes of § 1983.

### 1. Section 1983 claim against Titus

■ "[A] public employee acts under color of law when he '[e]xercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Johnson v. Phillips*, 664 F.3d 232, 239–40 (8th Cir.2011) (quoting *West*, 487 U.S. at 49, 108 S.Ct. 2250). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Roe v. Humke*, 128 F.3d 1213, 1215 (8th Cir.1997) (internal quotation marks omitted). A defendant is acting under color of

state law if he "acts or purports to act in the performance of official duties, even if he oversteps his authority and misuses power." *Johnson*, 664 F.3d at 240. But "[a]cts of officers in the ambit of their personal pursuits are plainly excluded" from the scope of § 1983 liability. *Dossett*, 399 F.3d at 949 (8th Cir.2005) (alteration in original) (quoting *Screws v. United States*, 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)).

■ To determine whether an official is acting under color of law, the Court "look[s] to see whether a sufficient nexus exists between the official's public position and the official's harmful conduct." *Ramirez–Peyro v. Holder*, 574 F.3d 893, 900 (8th Cir.2009). "Absent any actual or purported relationship between the officer's conduct and his duties as a police officer, the officer cannot be acting under color of state law." *Roe*, 128 F.3d at 1216. In determining whether a sufficient nexus exists in the context of a § 1983 claim brought against a police officer, the Court considers a number of factors, including whether the officer was on duty and in uniform, the motivation for the officer's actions, whether the officer had access to the plaintiff because of the officer's position, and whether the officer invoked his status or threatened to use his official authority in the future. *See Ramirez–Peyro*, 574 F.3d at 901. Where, as here, the plaintiff brings § 1983 claims against a public official based upon the official's reaction to a newspaper editorial, in determining whether the official acted under color of state law, the Court must examine "the nature of [the official's] response to the publication, rather than the content of

No. 61.) But Magee fails to identify any factual allegation that the Magistrate Judge should have but failed to consider in reaching his conclusions on the motions to dismiss. The Court reviews *de novo* only those portions of the R & R to which the complaining party

has lodged "**specific** written objections." Fed.R.Civ.P. 72(b)(2) (emphasis added). The Magistrate Judge carefully considered the factual allegations in Magee's proposed amended complaint, therefore the Court will overrule Magee's objection.

the publication itself." *See How v. City of Baxter Springs, Kan.*, 217 Fed.Appx. 787, 793 (10th Cir.2007).

 After considering the *Ramirez–Peyro* factors, the Court concludes that Magee's proposed amended complaint does not sufficiently plead that Titus was acting under color of state law when he allegedly violated her constitutional rights. Magee has not alleged that Titus was on duty or in uniform when he undertook any of the allegedly wrongful actions. With respect to Titus' motivation for allegedly violating Magee's constitutional rights, Magee argues that Titus was offended by Magee's public commentary about a case involving a police officer. (Proposed Am. Compl. ¶ 16.) Although Magee's editorial discussed police conduct, the Court must examine the nature of Titus' response to the publication, not the content of the editorial itself. *See How*, 217 Fed.Appx. at 793. Magee has not pleaded facts indicating that Titus responded to her editorial in his role as a police officer, rather than as a private citizen with opinions about race issues in policing and the criminal justice system. Similarly, Magee's proposed amended complaint does not indicate that Titus had access to her and her views because of his position as a police officer. Rather, Magee published her views in a newspaper available to any member of the public. Finally, the complaint does not adequately allege that Titus invoked his status when allegedly violating Magee's rights. In his response to Magee's editorial, Titus did specifically identify himself as a St. Paul police officer and the president of the St. Paul Police Federation. (Proposed Am. Compl. ¶ 19.) But the Magis-

trate Judge correctly found that this fact alone is insufficient to show that Titus was acting under color of state law. Magee's complaint does not plead facts which indicate that Titus "wore a badge of state authority" when he responded to her editorial. *See How*, 217 Fed.Appx. at 793. Moreover, the heart of Magee's constitutional claim is that Titus organized a boycott of Hamline to encourage Hamline to fire Magee in retaliation for her editorial. (*Id.* ¶¶ 22–23.) The proposed amended complaint does not, however, allege that Titus used his position as a police officer to influence his alleged interactions with the Hamline defendants.[4]

In her objections, Magee merely repeats the facts outlined in her proposed amended complaint. Magee identifies several facts in her proposed amended complaint that she contends show that Titus was acting under color of state law in allegedly violating Magee's First Amendment rights. Magee argues that Titus was a police officer and the President of the SPPF. (Proposed Am. Compl. ¶¶ 14–15.) These facts show only that Titus was a police officer, and say nothing about whether he was acting under color of state law when he allegedly violated Magee's rights by conspiring to have her terminated. *See Ottman v. City of Independence, Mo.*, 341 F.3d 751, 762 (8th Cir.2003) ("Mere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law." (internal quotation marks omitted)).

The other allegations identified by Magee in her objections similarly say nothing about whether Titus was acting in his role as a police officer **when** he allegedly violat-

---

**4.** *See, e.g., Rossignol v. Voorhaar*, 316 F.3d 516, 524–26 (4th Cir.2003) (finding that defendant police officers were acting under color of state law when they "use[d] their positions in the Sheriff's Department to ensure that they would not be prosecuted" for their

retaliatory conduct to silence plaintiff's speech that had been critical of defendants' "fitness for public office[,]" and defendants' "identities as state officers played a role" in allowing them to successfully violate the constitutional rights of plaintiff).

ed her constitutional rights. *See Ottman,* 341 F.3d at 761–62 ("[A] clear nexus must exist between the defendant's official conduct and the violation of the plaintiff's rights."). For example, Magee alleges generally that Titus was able to influence police policy through his position as an officer and president of the SPPF. (Proposed Am. Compl. ¶ 15.) That Titus may have been able to influence policy says nothing about whether Titus did so with respect to the present allegations. Additionally, the proposed amended complaint states that "David Titus as a police officer and also in conjunction with his role as President of the St. Paul Police Federation" organized other police officers and his associates "to inundate the Hamline President's Office with calls and other communications complaining about Professor Robin Magee's commentary and demanding that she be removed from her tenured faculty position at the University for her speech and her viewpoint." (*Id.* ¶ 18; *see also id.* ¶¶ 17, 125.) Although the complaint states Titus acted "as a police officer" "by and through" the St. Paul Police Department, these are simply "legal conclusion[s] couched as a factual allega-

tion," *see Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (internal quotation marks omitted), that the Court cannot use as a basis to draw the reasonable inference that Titus is liable for the misconduct alleged. Magee has not pleaded facts which indicate that Titus' reaction to Magee's editorial was made possible by, or undertaken in, his position as a police officer.

▮▮▮▮▮ Magee also appears to be arguing that even if Titus was not acting under color of law, certain of her allegations demonstrate that he conspired with state actors to deprive Magee of her constitutional rights. Only persons acting under color of state law can be held liable under § 1983. *Carlson v. Roetzel & Andress,* 552 F.3d 648, 650 (8th Cir.2008). Section 1983 therefore "secures most constitutional rights from infringement by governments, not private parties." *Crumpley–Patterson v. Trinity Lutheran Hosp.,* 388 F.3d 588, 590 (8th Cir.2004). "A private party may be held liable under § 1983 only if it is a 'willful participant in joint activity with the State or its agents.'" *Gibson v. Regions Fin. Corp.,* 557 F.3d 842, 846 (8th Cir.2009) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 941, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)).[5] "[A]

---

5. In her objections, Magee argues that the Magistrate Judge incorrectly concluded that Magee was required to prove a conspiracy between the private defendants and a state actor in order for the private defendants to be liable under § 1983. Instead, Magee argues it is enough to trigger § 1983 liability if private defendants have engaged in "concerted action" with state actors. Magee fails to explain how a concerted action or joint activity standard is materially different than a conspiracy. Indeed, the Eighth Circuit has consistently used these terms interchangeably in the context of § 1983 cases. *See, e.g., Young v. Harrison,* 284 F.3d 863, 870 (8th Cir.2002) (using the terms "jointly engaged," "conspiring," "meeting of the minds," and "concerted action," in a single paragraph to describe the necessary relationship between a private and state actor for purposes of § 1983). Furthermore, even if the standard for concerted ac-

tion was materially different than that of a conspiracy, Magee fails to explain how her proposed amended complaint would meet this standard. In fact, Magee specifically describes her § 1983 claim as a "conspiracy claim." (Pl.'s Objections at 2.) Finally, it is explicit in the Magistrate Judge's order that Magee's proposed amended complaint failed to allege a relationship between Titus and any state actor sufficient to establish liability under § 1983. The Magistrate Judge specifically stated "Magee does not allege sufficient facts to support a claim that Titus was **working in joint activity** with state officials to deprive Magee of a constitutional right." (R & R at 21, Oct. 15, 2012, Docket No. 56 (emphasis added).) Therefore the Magistrate Judge's decision cannot properly be read as limited only to a finding that Magee had not properly pled a conspiracy, and the Court will overrule this objection.

plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor" regarding the violation of plaintiff's constitutional rights. *Miller v. Compton,* 122 F.3d 1094, 1098 (8th Cir.1997) (internal quotation marks omitted). Mere allusion to such a conspiracy is insufficient; the conspiracy, or meeting of the minds, must be pleaded with specificity and factual support. *See Holbird v. Armstrong–Wright,* 949 F.2d 1019, 1020 (8th Cir.1991); *Deck v. Leftridge,* 771 F.2d 1168, 1170 (8th Cir. 1985).

■■■ In her objections, Magee again merely reiterates the allegations found in her proposed amended complaint, and does not identify any specific facts that were overlooked by the Magistrate Judge in recommending dismissal. Magee alleges generally that Titus had a close relationship with the St. Paul Police Department Chief Harrington. (Proposed Am. Compl. ¶ 25.) This allegation amounts only to a suggestion that Titus may have had an opportunity to conspire, which "is obviously not sufficient to 'nudge' a conspiracy claim 'across the line from conceivable to plausible.'" *See Lawrence v. City of St. Paul,* 740 F.Supp.2d 1026, 1050 (D.Minn. 2010) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

■■■ Similarly, Magee alleges that Titus recruited other officers in the St. Paul Police Department to boycott Hamline until Hamline terminated Magee and that Titus drafted a resolution requesting that the St. Paul Police Department participate in the boycott by ceasing to make contracts with Hamline. (*See* Proposed Am. Comp. ¶¶ 23–24, 32.) After the resolution

was circulated, Magee alleges that the St. Paul Police Department did not enter into any contracts with Hamline. (*Id.* ¶ 32.) Although these allegations, accepted as true, may show that Titus attempted to conspire with the St. Paul Police Department, they do not plausibly indicate that the St. Paul Police Department and Titus had a meeting of the minds where both the Department and Titus jointly agreed to violate Magee's constitutional rights.[6] Instead Magee's complaint contains only the legal conclusion that Titus "acted in concert with the public defendants to effectuate a common scheme or plan." (*Id.* ¶ 127.) These allegations are insufficient to overcome a motion to dismiss. *See Farm Credit Servs. of Am. v. Am. State Bank,* 339 F.3d 764, 767 (8th Cir.2003) (holding that courts are "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations"); *Kurtz v. City of Shrewsbury,* 245 F.3d 753, 758 (8th Cir.2001) ("Other than the appellant's bare allegations, the record is devoid of any evidence substantiating a claim of conspiracy"). Furthermore, Magee does not allege that the St. Paul Police Department entered into contracts with Hamline prior to the resolution; thus, the Department's alleged failure to do so after the resolution indicates only parallel conduct, which is insufficient to support a conspiracy claim. *See Lawrence,* 740 F.Supp.2d at 1050–51 (" 'An allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.'" (alteration omitted)

---

**6.** Magee's proposed amended complaint also contains numerous allegations of joint action between Titus and the SPPF. As explained below, because the SPPF is not a state actor, any conspiracy between Titus and the SPPF is insufficient to establish that Titus was acting under color of state law.

(quoting *Twombly*, 550 U.S. at 556–57, 127 S.Ct. 1955)).[7] Therefore, the Court finds that Magee's proposed amended complaint does not contain sufficient factual allegations to state a § 1983 claim against Titus, because he was not acting under color of state law at the time of the alleged constitutional violations.

### 2. Section 1983 claim against the Hamline Defendants

■■■ Magee also brings § 1983 claims against the Hamline Defendants, arguing that they conspired with Titus and the SPPF to violate Magee's constitutional rights. The Court has already determined that Titus was not a state actor. Similarly, as explained below, the Court will conclude that the SPPF was not a state actor. Because neither of the parties that the Hamline Defendants allegedly conspired with is a state actor, the Hamline Defendants cannot have been acting under color of state law when they allegedly violated Magee's constitutional rights. *See Gibson*, 557 F.3d at 846 ("A private party may be held liable under § 1983 only if it is a willful participant in joint activity with the State or its agents." (internal quotation marks omitted)). Therefore, the Court concludes that Magee's complaint fails to state a § 1983 claim against the Hamline Defendants, and will dismiss the claim.

### C. State Law Claims

The Hamline Defendants also bring a motion to dismiss Magee's claim for intentional interference with a contract against Lewis, and breach of contract against Hamline. After determining that all of Magee's federal claims should be dismissed, the Magistrate Judge recommended that the Court decline to exercise supplemental jurisdiction over her remaining state law claims. Magee objects to the Magistrate Judge's recommendation, arguing that the Hamline Defendants may enjoy a "litigative advantage in a state court" and that Magee intends to seek leave to amend her complaint again to add additional federal claims under 42 U.S.C. §§ 1981 and 1985. (Pl.'s Objections at 13, Oct. 29, 2012, Docket No. 61.) Lewis also objects to the Magistrate Judge's recommendation that the Court decline to exercise supplemental jurisdiction and dismiss Magee's claim for intentional interference with a contract without prejudice. Lewis argues that the claim should be dismissed with prejudice in the interests of judicial economy because the claim is based on the same alleged conduct as that underlying Magee's § 1983 claims.[8]

■■■ Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over a claim if "the

7. Moreover, even to the extent Magee's complaint properly pled concerted action between Titus and the St. Paul Police Department to boycott Hamline, Magee's complaint does not plead a plausible nexus between any state action and a violation of Magee's rights. *See Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) ("[S]tate action may be found if, though only if, there is such a close nexus **between the State and the challenged action** that seemingly private behavior may be fairly treated as that of the State itself." (emphasis added) (internal quotation marks omitted)). Magee argues that her constitutional rights were violated when she was terminated from Hamline, allegedly as retalia-

tion for the exercise of her First Amendment rights. But Titus' resolution was issued in 2007, and Magee was not terminated until 2011 after she was convicted of violating Minnesota's tax laws and over four years after Titus' alleged boycott.

8. Because dismissal based on a lack of subject matter jurisdiction is a dispositive matter, the Court addresses the issue *de novo*. *See Evans v. Rudy–Luther Toyota, Inc.*, 39 F.Supp.2d 1177, 1179 (D.Minn.1999) (reviewing *de novo* and adopting report and recommendation of magistrate judge recommending dismissal of remaining state law claims after dismissal of sole federal claim).

district court has dismissed all claims over which it has original jurisdiction." *See Zutz v. Nelson,* 601 F.3d 842, 850 (8th Cir.2010). "The Court has broad discretion in deciding whether to continue hearing state claims following dismissal of federal claims." *Shimer v. Shingobee Island Water & Sewer Comm'n,* Civ. No. 02–953, 2003 WL 1610788, at *8 (D.Minn. Mar. 18, 2003). In determining whether to exercise supplemental jurisdiction, courts consider judicial efficiency, convenience, and fairness to litigators. *Condor Corp. v. City of St. Paul,* 912 F.2d 215, 221 (8th Cir.1990). In assessing efficiency, convenience, and fairness, courts look to a number of factors, including "the stage of the litigation; the difficulty of the state claim; the amount of time and energy necessary for the claim's resolution; and the availability of a state forum." *Goddard, Inc. v. Henry's Foods, Inc.,* 291 F.Supp.2d 1021, 1051 (D.Minn.2003) (internal quotation marks omitted). "[W]hen federal claims are dismissed before trial, the normal practice is to dismiss pendent [state law] claims." *Stokes v. Lokken,* 644 F.2d 779, 785 (8th Cir.1981), *overruled on other grounds by Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). "If the claim giving original jurisdiction is dismissed early in the action, 'before any substantial preparation has gone into the dependent claims, dismissing or remanding the [state claims] upon declining supplemental jurisdiction seems fair enough.'" *Gregoire v. Class,* 236 F.3d 413, 419 (8th Cir.2000) (quoting 28 U.S.C. § 1367 cmt. at 835 (1993)). Courts should "exercise judicial restraint and avoid state law issues wherever possible," *Thomas v. Dickel,* 213 F.3d 1023, 1026 (8th Cir.2000), and the

factors considered typically point toward declining to exercise supplemental jurisdiction, *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

■ Considering all of these factors, the Court concludes that federal district court is not the most suitable forum for adjudicating Magee's state law claims. *See Ivy v. Kimbrough,* 115 F.3d 550, 552–53 (8th Cir.1997) (explaining that when all federal claims are dismissed pendent state claims are usually "dismissed without prejudice to avoid '[n]eedless decisions of state law ... as a matter of comity and to promote justice between the parties.'" (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966))). Although Magee's complaint was filed almost two years ago, the litigation is still in a very early stage. No discovery has been completed, and the Court has considered only the present dispositive motions. *See Washington v. Daimlerchrysler Fin. Servs. Am. LLC,* Civ. No. 08–0698, 2009 WL 35469, at *2 (D.Minn. Jan. 5, 2009) ("There has been some initial discovery and Plaintiff has filed a non-dispositive motion, but this is not a situation where the court has invested considerable resources into the matter." (internal quotation marks omitted)).[9] Therefore, the stage of litigation does not weigh in favor of the Court resolving Magee's state claims in this federal forum.

Lewis argues primarily that the intentional interference claim is not difficult to resolve, and therefore should be determined by the Court, and then proceeds in six pages of objections to explain why the claim should be dismissed. (Def. Lewis' Objections at 2–8, Oct. 29, 2012, Docket No. 58.)[10] Lewis' description of why the

---

9. *See also Evans v. Rudy–Luther Toyota, Inc.,* 39 F.Supp.2d 1177, 1186 (D.Minn.1999) (remanding state claims where the litigation was "still comparatively undeveloped," and discovery had not yet closed).

10. Lewis' objections rely on the argument that Magee's intentional interference claim necessarily fails if her § 1983 claim is dismissed. In her complaint, Magee states that:

claim should be dismissed belies his argument that the intentional interference claim would not be difficult to resolve. For example, Lewis' argument raises factual and legal issues concerning his good faith, whether he may be liable as an officer of Hamline, whether he was acting outside the scope of his duties, and whether he acted with malice. The difficulty of the claim therefore weighs in favor of declining to exercise supplemental jurisdiction. Furthermore, even if the claim were easily resolved, federal courts should exercise restraint in not unnecessarily resolving state claims. *See Washington,* 2009 WL 35469, at *2 ("[A]lthough the remaining claims concern neither difficult nor unsettled areas of state law, judicial restraint counsels against resolving them where it appears that little of the parties, or the Court's resources have already been devoted to their merits." (internal quotation marks omitted)).[11] The Court finds

that the difficulty of the claim weighs in favor of declining to exercise supplemental jurisdiction.

Additionally, the parties have not devoted substantial time and energy to resolving the state law claims in this Court, which also weighs in favor of declining to exercise supplemental jurisdiction. Although the parties and the Court have examined the factual allegations underlying the § 1983 claims and some of those factual issues are related to the state law claims, the state law claims also raise numerous independent factual and legal issues. Courts frequently decline to exercise supplemental jurisdiction over state law claims, even though federal claims may arise from the same set of facts. *See Hanson–Haukoos v. Hormel Foods Corp.,* Civ. No. 05–1575, 2006 WL 3060485, at *6–7 (D.Minn. Oct. 26, 2006) (declining to exercise supplemental jurisdiction over a wrongful termination and defamation claim which arose out of the same operative facts as plaintiff's dismissed federal claim).[12]

A valid contract existed between Magee and Hamline University. Defendant Lewis knew about Magee's employment contract with Hamline. Defendant Lewis maliciously interfered with Magee's employment contract. Lewis intentionally induced Hamline to suspend and terminate Magee. Dean Lewis' conduct was not justified and was illegal (working together with police to retaliate against Magee for her exercise of First Amendment rights).

(Compl. ¶ 26.) Lewis argues that if the Court determines that the retaliation conduct was not illegal by dismissing the § 1983 claim against Lewis, Magee's claim for intentional interference necessarily fails. But in Minnesota, a cause of action for intentional interference with a contract does not require a plaintiff to plead that defendant's conduct in interfering with the contract was also illegal on independent grounds. Instead, "[a] cause of action for wrongful interference with a contractual relationship requires: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *Kjesbo v. Ricks,* 517 N.W.2d 585, 588 (Minn.1994) (internal quotation marks omitted). "Interfer-

ence is unjustifiable when it is done for the indirect purpose of injuring the plaintiff or benefiting the defendant." *Furlev Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.,* 325 N.W.2d 20, 27 (Minn.1982). Therefore, in order to establish that Lewis' conduct was not justified, Magee need not plead that his conduct was illegal independent of the interference tort. That Magee's § 1983 claim will be dismissed against Lewis is not, therefore, dispositive of whether Lewis may be liable for intentional interference with a contract.

11. Additionally, Lewis argues that the claim against him should be resolved for reasons of judicial efficiency. But it would not be efficient, nor particularly convenient, for the Court to resolve the intentional interference claim while declining to exercise supplemental jurisdiction over the breach of contract claim asserted against Hamline, which no defendant has argued should be resolved by this Court.

12. *See also Wallin v. Minn. Dep't of Corr.,* 974 F.Supp. 1234, 1244–45 (D.Minn.1997) (declining to exercise supplemental jurisdiction over plaintiff's breach of contract and tortious

Therefore, the Court finds that the amount of time and energy necessary to resolve the remaining state law claims also weighs in favor of declining to exercise supplemental jurisdiction.

Finally, the parties do not dispute that there is an available state forum in which to resolve the remaining state claims. Although Magee has suggested that she intends to bring more federal claims against Defendants, Magee did not assert these claims in either her original or her proposed amended complaint. The Court will not exercise supplemental jurisdiction over claims that are properly litigated in state court based upon the hypothetical introduction of other federal claims. The Court concludes that this case is "the usual case in which all federal-law claims are eliminated before trial" wherein "the balance of factors to be considered ... point toward declining to exercise jurisdiction over the remaining state-law claims." *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Therefore, the Court expresses no viewpoint on the merits of Magee's state law claims and will decline to exercise supplemental jurisdiction over these claims.

## II. MOTION TO AMEND

### A. Standard of Review

■■■■ Typically the standard of review applicable to an appeal of a magistrate judge's order on nondispositive pretrial matters, such as leave to amend a complaint, is extremely deferential. *Roble v. Celestica Corp.*, 627 F.Supp.2d 1008, 1014 (D.Minn.2007); *see also Damon v. Groteboer*, Civ. No. 10–92, 2013 WL 53833, at *1–2 (D.Minn. Jan. 3, 2013). The Court "must consider timely objections and modify or set aside any part of the order that is

clearly erroneous or is contrary to law." Fed.R.Civ.P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A); D. Minn. LR 72.2(a). However, the Court reviews *de novo* a magistrate judge's determination that a motion to amend a pleading will be denied because the amendment would be futile. *See, e.g., Am. Ins. Co. v. St. Jude Med. Inc.*, 597 F.Supp.2d 973, 977 (D.Minn. 2009); *cf. In re NVE Corp. Sec. Litig.*, 527 F.3d 749, 752 (8th Cir.2008) ("We ordinarily review the denial of leave to amend a complaint for abuse of discretion, but when the district court denies leave on the basis of futility we review the underlying legal conclusions de novo.").

Rule 15(a) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R.Civ.P. 15(a)(2). But "[a] district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.com Secs., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir.2005) (internal quotation marks omitted). Amendment is futile where the proposed amended claim would not withstand a motion to dismiss. *See Lunsford v. RBC Dain Rauscher, Inc.*, 590 F.Supp.2d 1153, 1158 (D.Minn.2008).

Here, the Magistrate Judge granted Magee's motion to amend the complaint to add additional factual allegations. No party has objected to this portion of the Magistrate Judge's order, and the Court will affirm this determination as it is neither erroneous nor contrary to law. But the Magistrate Judge denied Magee's motion

---

interference with contract claims arising out of the same termination facts that were the

basis of plaintiff's dismissed § 1983 claim).

to the extent it sought to add a new defendant and additional claims, · because the Magistrate Judge determined that amendment as to each claim would be futile. Therefore, the Court applies a *de novo* standard of review to the Magistrate Judge's order denying in part Magee's motion to amend her complaint.

### B. Amendment as of Right

In her objections, Magee argues for the first time that she should have been allowed to amend her complaint as a matter of right, and the Magistrate Judge therefore erred in denying her motion to amend. Federal Rule of Civil Procedure 15 provides that "A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed.R.Civ.P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2).

▆▆ Magee's original complaint was filed on April 15, 2011, and she brought a motion to amend her complaint on May 11, 2012, well outside of the twenty-one days after service contemplated by Rule 15(a)(1)(A). Therefore, Magee could only be entitled to amend as of right if her amended complaint was filed within twenty-one days of either a responsive pleading or a motion under Rule 12. Defendants filed their motions to dismiss under Fed. R.Civ.P. 12(b)(6) on April 20, 2012.[13] Magee filed a motion for leave to amend her complaint on May 11, 2012. (Mot. to Amend, May 11, 2012, Docket No. 32.) This motion was filed within twenty-one days of Defendants' motions to dismiss, indicating that Magee may have been entitled to amendment as of right. But Magee did not actually file her amended complaint until May 14, 2012, (Ex., May 14, 2012, Docket No. 36), after the twenty-one day period for filing as of right expired. It is insufficient for purposes of amendment as of right under Rule 15(a)(1) to simply file a motion to amend within the twenty-one day time period, without actually filing a copy of the amended pleading. *See* D. Minn. LR 15.1(a) ("Any motion to amend a pleading must be accompanied by . . . a copy of the proposed amended pleading[.]"); *Brodkorb v. Minnesota,* Civ. No. 12–1958, 2013 WL 588231, at *8 (D.Minn. Feb. 13, 2013) (denying plaintiff's motion for leave to amend as of right where, among other procedural problems "the request is unaccompanied by any proposed amended pleading").[14] Because Magee failed to file her amended complaint within the twenty-one day period for filing as of right, the Magistrate Judge properly considered Magee's request to amend her

---

13. Defendants contend that the relevant motion from which to count twenty-one days was the motion to dismiss for failure of service filed by the Hamline Defendants on February 3, 2012. (Mot. to Dismiss, Feb. 3, 2012, Docket No. 8.) But this motion was brought under Federal Rule of Civil Procedure 4(m), which is not a rule governing amendment of complaints under Rule 15(a). Therefore, for purposes of determining whether Magee was entitled to amend her complaint as of right, the February 3, 2012 motion to dismiss is irrelevant.

14. *See also Merritt v. Fogel,* 349 Fed.Appx. 742, 745 (3d Cir.2009) (noting that a motion to amend the complaint can be construed as the filing of an amended complaint for purposes of Fed.R.Civ.P. 15(a)(1) when the "amended complaint was attached" to the motion); *Johnson v. District of Columbia,* 244 F.R.D. 1, 4 (D.D.C.2007) (explaining that to comply with Rule 15(a)(1) "[t]he plaintiff need only file the amended pleading").

complaint as one requiring the court's permission. *See* Fed.R.Civ.P. 15(a)(2).

### C. Proposed Claim for Violation of Section 1983 Against the SPPF

In her proposed amended complaint, Magee asserts a § 1983 claim against a new party, the St. Paul Police Federation. The SPPF is a labor union that represents St. Paul police officers. Titus was the president of the SPPF during the time period of the conduct alleged in Magee's complaint. (Proposed Am. Compl. ¶ 14.) As explained above, to state a claim under § 1983, Magee must show that the alleged violation of her constitutional rights "was committed by a person acting under color of state law." *See West,* 487 U.S. at 48, 108 S.Ct. 2250.

 Labor organizations are generally not state actors within the meaning of § 1983. *See Stodghill v. Serv. Emps. Int'l Union, Local 50, AFL–CIO, CLC,* 192 F.3d 1159, 1162 (8th Cir.1999); *O'Connor v. City of St. Paul,* Civ. No. 01–846, 2001 WL 1677605, at *5 (D.Minn. Dec. 21, 2001). Moreover, "the fact that the Union represents public employees does not make it a state actor." *Dorcely v. Wyandanch Union Free Sch. Dist.,* No. 06–CV–1265, 2007 WL 2815809, at *4 (E.D.N.Y. Sept. 25, 2007). The mere fact that the SPPF was made up of police officers is therefore insufficient to demonstrate liability under § 1983. Magee has not alleged that the SPPF was a state actor; therefore, Magee's proposed amended complaint can only state a claim against the SPPF to the extent it properly pleads that the SPPF engaged in concerted action with the St. Paul Police Department to violate Magee's constitutional rights.[15] *See Peltonen v. Branch No. 9,* Civ. No. 05–605, 2006 WL 2827239, at *23 (D.Minn. Sept. 29, 2006)

("[T]here are occasions where a private party such as a union may be liable under § 1983 for conspiring with public officials 'to violate a private citizen's right to freedom of speech under the First Amendment, just as it may be held liable for conspiring to violate other constitutional rights.'" (quoting *Dossett,* 399 F.3d at 950)).

 In her objections, Magee makes only general references to allegations regarding a conspiracy, and the focus of Magee's allegations is on the existence of conspiracy between Titus, the SPPF, and Hamline, none of which are state actors. The only concrete allegation alleging the existence of a conspiracy between the SPPF and the St. Paul Police Department is the resolution drafted by Titus asking the Department to boycott Hamline. As explained above, although this allegation may show that the SPPF attempted to conspire with the Department, it does not indicate that the Department had a meeting of minds with the SPPF to deprive Magee of her constitutional rights. The other allegations referenced by Magee in her objections either refer only to alleged connections between non-state actor defendants or contain conclusory statements that the SPPF conspired with the St. Paul Police Department. (*See, e.g.,* Proposed Am. Compl. ¶¶ 125–26.) These allegations are insufficient to demonstrate the existence of concerted action for purposes of Imposing § 1983 liability. *See Smith v. Bacon,* 699 F.2d 434, 436 (8th Cir.1983) (per curiam) (explaining that allegations must at least include that "the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding" and provide some facts suggesting a meeting of the minds).

---

**15.** Because the Court has already determined that Titus was not a state actor with respect to the conduct alleged by Magee's complaint, a

conspiracy between Titus and the SPPF would be insufficient to establish the SPPF's § 1983 liability.

Therefore, the Court concludes that the Magistrate Judge correctly determined amendment to add the SPPF as a defendant would be futile.

### D. Proposed State Law Claims

 Magee also sought to amend her complaint to add claims for tortious interference with an employment contract against Titus and the SPPF as well as claims for promissory estoppel, breach of the duty of good faith and fair dealing, and defamation against Hamline. The Magistrate Judge determined that each of these claims would be futile, and therefore denied Magee's motion to amend. Because the Court has declined to exercise supplemental jurisdiction over Magee's state law claims, it need not consider Magee's objections to the Magistrate Judge's futility determination. Even if these state law claims were not futile, the Court would decline to exercise jurisdiction over them.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Plaintiff's objections [Docket No. 61] and Defendant Donald Lewis' objections [Docket No. 58]. Accordingly, **IT IS HEREBY ORDERED** that:

1. The Magistrate Judge's October 15, 2012 Order [Docket No. 56] is **AFFIRMED.**

2. The Report and Recommendation of the Magistrate Judge's [Docket No. 56] is **ADOPTED.**

3. Defendant David Titus' Motion to Dismiss [Docket No. 20] is **GRANTED.**

4. Plaintiff's Section 1983 Claim (Count I) against Defendant Titus is **DISMISSED with prejudice.**

5. The Hamline Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 24] is **GRANTED.**

 a. Plaintiff's Section 1983 Claims (Count I) against the Trustees of the Hamline University are **DISMISSED with prejudice.**

 b. Plaintiff's Intentional Interference with a Contract Claim against Donald Lewis (Count II) is **DISMISSED without prejudice.**

 c. Plaintiff's Breach of Contract Claim against the Trustees of the Hamline University (Count III) is **DISMISSED without prejudice.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

### ORDER AND REPORT & RECOMMENDATION

ARTHUR J. BOYLAN, United States Chief Magistrate Judge.

This matter is before the Court, Chief Magistrate Judge Arthur J. Boylan, on Defendant David Titus' Motion to Dismiss [Docket No. 20], a Motion to Dismiss or for Summary Judgment by Defendants Trustees of the Hamline University ("Hamline") and Donald Lewis (together, the "Hamline Defendants") [Docket No. 24], and Plaintiff's Motion for Leave to File an Amended Complaint [Docket No. 32]. The motions to dismiss [Docket Nos. 20 and 24] have been referred to the magistrate judge for report and recommendation to the district court under 28 U.S.C. § 636 and Local Rule 72.2(b). For the reasons discussed below, Plaintiff's motion to amend is granted in part and denied in part and it is recommended that defendants' motions to dismiss be granted.

### FACTUAL BACKGROUND

Plaintiff Robin Magee was a tenured law professor at Hamline University School of Law. (Docket No. 1, Compl. ¶ 1.) Magee taught classes at Hamline on policing and police misconduct. (*Id.* at ¶ 9.) Magee ac-

tively participated in public debate about issues of race as related to state courts and police. (*Id.* at ¶ 8.)

In 2007, Magee wrote a letter to the editor of the St. Paul Pioneer Press commenting on a high-profile trial in which the defendant was accused of killing a St. Paul Police Officer. (Compl. ¶ 10.) In her letter, Magee criticized the state courts and specifically disagreed with the decision of a Ramsey County Judge not to investigate allegations of racism among the jury. (*Id.*) Defendant David Titus, a police officer with the City of St. Paul, wrote a responsive letter to the editor, which also was published on the St. Paul Police Federation website. (*Id.* at ¶ 11.) In his response, Titus criticized Magee's opinions, suggested that Magee should have her "fitness to teach re-examined," and stated that he hoped Magee would keep her "race baiting and cop-hating" out of the classroom. (*Id.*) Magee alleges that Titus also contacted Hamline University with intent to have her fired. (*Id.* at ¶ 12.)

Defendant Donald Lewis became Dean of the Hamline University School of Law following these events. (Compl. ¶ 13.) Magee believes that when Lewis became Dean, he began to work with police to suspend and then terminate her. (*Id.*)

In September 2009, Magee was charged in Ramsey County District Court with multiple counts of tax law violations. (Compl. ¶ 14; *see* Proposed Amended Compl. ("PAC") ¶ 47.) After she was charged, Magee was suspended from Hamline. (Compl. ¶ 15.)

In February 2011, Magee was convicted of misdemeanor tax law violations. (*See* Compl. ¶ 17.) After return of the jury's verdict, Hamline initiated termination proceedings against Magee. (*Id.*) Magee believes that her termination from Hamline was the result of concerted efforts between Hamline and St. Paul police and that it was motivated by her public critique of local government. (*Id.* at ¶¶ 17–18.) Magee believes that Lewis and Hamline orchestrated her termination "to please police" and "prevent her from teaching about police misconduct, and ... restrain her speech," and in order to retaliate against her for "past speech criticizing government." (*Id.* at ¶ 17.)

## PROCEDURAL BACKGROUND

Magee filed her Complaint on April 15, 2011. (Docket No. 1.) The Complaint names Hamline University; Donald Lewis, Dean of Hamline University Law School; David Titus; and John Does 1–5 as Defendants. Magee's Complaint alleges violations of 42 U.S.C. § 1983 against all defendants. She alleges that defendants retaliated against her for exercise of her First Amendment rights and violated her right to petition the government for redress of grievances. (Compl. ¶¶ 19–24.) Magee's Complaint also asserts a claim for intentional interference with contract against Lewis (*Id.* at ¶¶ 25–27) and a claim for breach of contract against Hamline. (*Id.* at ¶¶ 28–31.)

On February 3, 2012, the Hamline Defendants filed a motion to dismiss for lack of service. (Docket No. 3.) On the same day, Magee filed a motion for extension of time to serve the complaint. (Docket No. 8.) This Court granted Plaintiff's motion on February 29, 2012. (Docket No. 18.) Magee served all defendants with her Complaint on March 30, 2012.

On April 20, 2012, Titus and the Hamline Defendants filed the present motions to dismiss. (Docket Nos. 20, 24.) In his motion to dismiss, Titus argues that Magee has failed to state a claim against him under 42 U.S.C. § 1983 and has failed to sufficiently allege that he was working under color of state law, in concert with state officials, or in conspiracy with other defendants to deprive Magee of her constitu-

tional rights. In the Hamline Defendants' motion to dismiss, they argue that they are not government actors and are therefore not liable to Magee under 42 U.S.C. § 1983 and that Magee has not sufficiently alleged that they acted in concert or conspiracy with state officials. In addition, they argue that Magee has failed to allege facts to support claims of breach of contract against Hamline or intentional interference against Lewis.

On May 11, 2012, Magee filed the present motion to amend the complaint. (Docket No. 32.) She filed her Proposed Amended Complaint on May 14, 2012. (Docket No. 36.) The Proposed Amended Complaint adds factual allegations, asserts new causes of action against Titus, Hamline, and Lewis, and adds as a defendant the St. Paul Police Federation ("SPPF"). The Proposed Amended Complaint asserts a violation of 42 U.S.C. § 1983 against all defendants; intentional interference with employment contract against Lewis, Titus, and the SPPF; and breach of contract, promissory estoppel, good faith and fair dealing, and defamation against Hamline. Magee asserts that the additional factual allegations in the Proposed Amended Complaint dispel the defendants' arguments in support of dismissal.

A hearing on the motions was scheduled for June 13, 2012. Michelle Grant appeared on behalf of Titus. Sara Gullickson McGrane and Maurice Jenkins appeared on behalf of the Hamline Defendants. Magee's counsel notified the court immediately before the hearing that she would be unable to attend. The hearing was therefore rescheduled for June 25, 2012. The parties were advised that if counsel failed to appear at the rescheduled hearing, the matter would be taken under advisement on the papers submitted. At the June 25, 2012 hearing, Michele Grant appeared on behalf of Titus and Sara Gullickson McGrane and John Ella appeared for the Hamline Defendants. Magee's counsel failed to appear at the rescheduled hearing. No oral argument was permitted by any party and the motions were taken under advisement on the papers submitted.

## DISCUSSION

### I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 15 permits amendment to a complaint by leave of court and mandates that leave be freely given when justice requires. Fed.R.Civ.P. 15(a). Parties do not, however, have an absolute right to amend their pleadings. *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir.2005). The granting of a motion to amend is vested in the sound discretion of the trial court. *White Consol. Indus., Inc. v. Waterhouse*, 158 F.R.D. 429, 434 (D.Minn.1994) (citing *Ryan v. Sargent*, 969 F.2d 638, 641 (8th Cir.1992)). Courts may deny an amendment for reasons such as "undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir.2008) (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir.2005)). An amendment is futile if it fails to create claims that would withstand a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Lunsford v. RBC Dain Rauscher, Inc.*, 590 F.Supp.2d 1153, 1158 (D.Minn. 2008).

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint must be dismissed if it fails to state a claim upon which relief can be granted. The complaint must plead facts that render a defendant's liability plausible—not merely

possible. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While a complaint need not contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. 662 at 678, 129 S.Ct. 1937 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To withstand dismissal, the complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* When reviewing a complaint on a motion to dismiss, the Court must accept all factual allegations as true and must construe those facts in the light most favorable to the nonmoving party. *Carton v. Gen. Motors Acceptance Corp.,* 611 F.3d 451, 454 (8th Cir.2010). It must not, however, give effect to conclusory allegations of law. *Stalley ex rel. United States v. Catholic Health Initiatives,* 509 F.3d 517, 521 (8th Cir.2007).

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, a Rule 12(b)(6) motion must be treated as a motion for summary judgment. Fed.R.Civ.P. 12(d). But the court may consider exhibits attached to the complaint and documents that are necessarily embraced by the complaint without converting the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697 n. 4 (8th Cir.2003). In addition, the court may consider public records on a motion to dismiss. *Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir.2007). The Hamline Defendants have submitted an affidavit with exhibits along with their motions and memorandums. They argue that if such documents are not embraced by the complaint, that the Court should convert their motion to one for summary judgment. The Court will not consider evidence outside of the pleadings and confines its analysis to Plaintiff's Complaint. Therefore, conversion of their motion to

dismiss to a motion for summary judgment is unnecessary.

## II. *PLAINTIFF'S MOTION TO AMEND*

In her Proposed Amended Complaint, Magee seeks to add numerous allegations meant to cure the deficiencies defendants identified within her original Complaint. In addition to asserting additional factual allegations, Magee's Proposed Amended Complaint asserts new claims and adds a new defendant. Magee seeks to add a claim of intentional interference with contract against Defendant Titus, add claims for promissory estoppel, good faith and fair dealing, and defamation against Defendant Hamline, and to name the SPPF as new defendant on Section 1983 and intentional breach of contract claims.

### A. Proposed Addition of Factual Allegations

Magee offers over one hundred additional allegations in her Proposed Amended Complaint. Several of these new allegations involve Titus' connections to the St. Paul Police Department ("SPPD") and the Saint Paul Police Federation ("SPPF"). (PAC ¶¶ 14–49.) Magee alleges that Titus was President of the SPPF and a 20–year veteran officer in the SPPD. (*Id.* at ¶¶ 14–15.) She alleges that Titus' letter to the editor identified himself as a St. Paul police officer and president of the SPPF (*Id.* at ¶ 19), that Titus also secured an editorial from SPPD Chief David Harrington that was published in the St. Paul Pioneer Press (*Id.* at ¶ 22), and that "Titus enjoyed a particularly close relationship to SPPD Chief Harrington." (*Id.* at ¶ 25.)

The Proposed Amended Complaint alleges that "David Titus, by and through the SPPD and [SPPF], organized an interminable and blistering campaign and boycott against Professor Magee to destroy her reputation, silence her viewpoint and to strip her of her employment with Ham-

line." (PAC ¶¶ 15, 17.) In the boycott resolution, Titus "indicated that he would urge SPPD Chief Harrington and the SPPD more generally to join the boycott against Hamline unless and until punitive action was taken" against Magee. (*Id.* at ¶ 23.). The boycott resolution stated that "members of the [SPPF] shall not participate in any future continued education, professional training programs or other similar that is a product of Hamline University" and that "[w]e strongly request that the police department discontinue and make no future contracts or agreements with Hamline University for educational purposes." (*Id.* at ¶¶ 31–32.) The Proposed Amended Complaint asserts, upon information and belief, that following the posting of the resolution, the SPPD "did not enter into contracts with Hamline." (PAC ¶ 32.)

Magee also alleges that Titus sent Lewis and the president of Hamline an e-mail on September 9, 2009 in which he "called their attention to his boycott and urged Hamline to take punitive action against Professor Magee and remove her from the classroom" and that Lewis responded by "informing Titus that he needed to pursue a set procedure in order to terminate Professor Magee." (PAC ¶¶ 49–50.) Magee alleges that "[t]his, among other evidence, shows a meeting of the minds." (*Id.* at ¶ 50.)

In addition to the new allegations regarding Titus and the SPPF, the Proposed Amended Complaint also contains numerous new allegations regarding Hamline's alleged breach of contract. Magee alleges that the contract at issue is the Hamline Faculty Handbook, which describes in Section 8 of the Handbook "the process that must be used" for de-tenure or termination proceedings. (PAC ¶¶ 70, 75.) Magee alleges that Hamline engaged in a "sham process" to try to "make it appear that Section 8 of the Handbook was being fol-lowed" when it instituted de-tenure proceedings against her in 2011. (*Id.* at ¶ 77.) She asserts that Hamline violated the Handbook by not following the required procedures set forth in Section 8 in various ways. (*Id.* at ¶¶ 77–123.)

Defendants argue that Magee's proposed amendment is futile because her claims still fail even with the new factual allegations. The Hamline Defendants also argue that the amendment will cause them undue prejudice and that Magee has engaged in undue delay. With respect to undue delay, although the case was originally filed over one year ago, the parties have not yet commenced discovery and a scheduling order has not been issued. Magee has not engaged in such undue delay to warrant denying her motion to amend. The Court also finds that defendants will not be unfairly prejudiced by allowing the amendment to include the new factual allegations. Defendants still have the opportunity to present their arguments for dismissal of the claims considering the new factual allegations and have done so. Finally, the Court finds that defendants' futility argument does not justify denying amendment to include the additional factual allegations. Magee should be allowed the opportunity to present the factual allegations in the Proposed Amended Complaint in the context of defendants' motions to dismiss. Therefore, Magee's motion to amend the complaint is granted to the extent the Proposed Amended Complaint adds new factual allegations in Paragraphs 7 through 123. The Court will consider defendants' arguments on their motions to dismiss in light of the factual allegations contained in the Proposed Amended Complaint.

**B. Proposed Claim for Violation of 42 U.S.C. § 1983 Against the St. Paul Police Federation**

In Count I of Magee's Proposed Amended Complaint, she asserts a claim for viola-

tion of 42 U.S.C. § 1983 against a new party, the St. Paul Police Federation.[1] Magee offers no explanation for why the SPPF was not included in her initial Complaint. Magee alleges that all defendants acted together or in conspiracy to violate her Fourteenth Amendment rights, including engaging in First Amendment retaliation, viewpoint discrimination, and violation of the right to petition the government for redress of grievances. (PAC ¶¶ 125–26.) Magee further alleges that "Titus acted with sufficient nexus to his St. Paul Police officer status to be clothed with the authority of his public position, acted under pretense of law, and there was sufficient nexus between the public position and the harmful conduct" and that "the private defendants acted in concert with the public defendants to effectuate a common scheme or plan, with a meeting of the minds, to violate Magee's constitutional rights." (*Id.* at ¶¶ 125, 127.)

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *see also Carlson v. Roetzel & Andress,* 552 F.3d 648, 650 (8th Cir.2008) (stating that to establish a claim under 42 U.S.C. § 1983, a plaintiff must show that she was injured either by a state actor or by a private individual acting "under color of state law"). Labor unions, including unions of public employees, are generally considered private actors outside the purview of Section 1983. *Peltonen v. Branch No. 9,* No. 05–cv–605, 2006 WL 2827239 at *23 (D.Minn. Sept. 29, 2006) (citing *Stodghill v. Service Employees In-*

*tern. Union, Local 50, AFL–CIO, CLC,* 192 F.3d 1159, 1162 (8th Cir.1999)). Other than her general conclusory allegation that "[t]he Defendants acted under color of law (PAC ¶ 127), Magee has not specifically alleged that the SPPF acted under color of law nor offered any factual allegations to suggest that the SPPF was acting under color of law. The mere fact that the SPPF represents police officers does not make the union itself a public actor." *See, e.g., Dorcely v. Wyandanch Union Free Sch. Dist.,* No. 06–CV–1265 (DRH)(AKT), 2007 WL 2815809 at *4 (E.D.N.Y. Sept. 25, 2007).

Although the union is a private actor, there are occasions where a private party such as a union may be liable under Section 1983 for conspiring with public officials "to violate a private citizen's right to freedom of speech under the First Amendment, just as it may be held liable for conspiring to violate other constitutional rights." *Peltonen,* 2006 WL 2827239 at *23 (citing *Dossett v. First State Bank,* 399 F.3d 940, 950 (8th Cir.2005)). A private entity's action can constitute state action when "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary School Athletic Ass'n,* 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)). There must be a 'close nexus' not merely between the state and the private party, but between the state and the alleged deprivation itself. *See Brentwood,* 531 U.S. at 295, 121 S.Ct. 924. A private entity may be considered a state actor if it

---

**1.** Magee's Proposed Amended Complaint also asserts violation of 42 U.S.C. § 1983 against Titus and the Hamline Defendants, as did her original Complaint. Titus and the Hamline Defendants have moved to dismiss the Section 1983 claims against them, which is discussed below with respect to defendants' motions to dismiss.

'has acted together with or has obtained significant aid from state officials' in furtherance of the challenged action. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). To establish a claim against a private actor under Section 1983, there must be "a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Miller v. Compton*, 122 F.3d 1094, 1098 (8th Cir.1997) (quoting *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993)).

Magee asserts that all defendants acted in conspiracy, with a meeting of the minds, to deprive her of constitutionally-guaranteed rights. In her Proposed Amended Complaint, Magee alleges that Titus' letter to the editor identified himself as president of the SPPF and that Titus through the SPPF, declared a boycott against Hamline until it took punitive action against Magee. (PAC ¶¶ 19, 23.) Magee alleges that the SPPF's boycott resolution urged the SPPD to join the boycott against Hamline and that "[u]pon information and belief Titus was successful in obtaining assistance from" police officers or the SPPD to boycott Hamline. (PAC ¶¶ 23–24.) But Magee has not alleged facts supporting a conspiracy or meeting of the minds between the SPPF and any public actors. The Proposed Amended Complaint contains no factual allegations of a mutual understanding between the SPPF and the police department concerning an unlawful objective to violate Magee's constitutional rights. *See White v. McKinley*, 519 F.3d 806, 816 (8th Cir.2008). Magee's allegation that the SPPF boycott was "effectuated by numerous public police officers" is insufficient to render her claim against the SPPF plausible, as it does not acknowledge the distinction between police officers acting in

their official capacity and in their personal lives. *See Lawrence v. City of St. Paul*, 740 F.Supp.2d 1026, 1046 (D.Minn.2010). Magee's assertion that Titus acted with sufficient nexus to his police officer status to act under color of law is a conclusory allegation of law that is not entitled to an assumption of truth. *Delgado–O'Neil v. City of Minneapolis*, No. 08–4924, 2010 WL 330322 (D.Minn. Jan. 20, 2010) *aff'd*, 435 Fed.Appx. 582 (8th Cir.2011).

Because the SPPF is a private entity not liable under 42 U.S.C. § 1983 and Magee has not alleged facts supporting her conclusory allegation that defendants acted under "color of law" or that the SPPF acted in concert with public officials, Magee's proposed Section 1983 claim against the SPPF could not survive a Rule 12(b)(6) motion to dismiss. Allowing the amendment would be futile and is denied.

### C. Proposed Claim for Intentional Interference with Employment Contract Against David Titus and the St. Paul Police Federation

In Count II of her Proposed Amended Complaint, Magee asserts claims for intentional interference with contract against Titus and the SPPF.[2] Magee alleges that Titus and the SPPF "knew about Magee's employment contract with Hamline" and that they "intentionally induced Hamline to suspend and terminate Magee, in a manner that he [sic] knew violated Magee's contract." (PAC ¶ 131.) Titus argues that Magee fails to allege facts to support a claim that he knew of the contract or procured its breach.

■ To successfully state a claim of intentional interference with contract, a plaintiff must allege facts supporting the following elements: "(1) the existence of a

---

**2.** Magee's Proposed Amended Complaint also retains an Intentional Interference with Employment Contract claim against Lewis, which is discussed below with respect to the Hamline Defendants' motion to dismiss.

contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *E–Shops Corp. v. U.S. Bank Nat. Ass'n*, 795 F.Supp.2d 874, 878 (D.Minn.2011) *aff'd*, 678 F.3d 659 (8th Cir.2012); *see also Furlev Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.*, 325 N.W.2d 20, 25 (Minn. 1982).

Magee alleges in conclusory fashion that Titus and the SPPF "knew about Magee's employment contract with Hamline." Magee alleges facts supporting an allegation that Titus knew that she worked at Hamline, but there are no facts suggesting that Titus knew that Magee had a contract with Hamline rooted in the policies set forth in the Faculty Handbook.

In addition, Magee has not sufficiently alleged that Titus and the SPPF intentionally procured the breach of her alleged contract with Hamline. The claimed breach of contract at issue in this case is Hamline's alleged failure to follow the procedures set forth in the Faculty Handbook for de-tenuring a faculty member. Magee offers no facts to support an allegation that Titus or the SPPF took any action to intentionally cause Hamline not to follow these Handbook procedures. The only actions Magee alleges that Titus and the SPPF took directed at Hamline appear to be that "Titus, by and through the SPPF, declared a boycott against Hamline until it took punitive action against Professor Robin Magee for her published commentary about police" and that Titus sent an e-mail to Lewis urging Hamline to "take punitive action against Professor Magee and remove her from the classroom." (PAC ¶¶ 23, 49.) These alleged facts are unrelated to the process and procedures used by Hamline related to her discharge. Magee has not pleaded facts from which the Court could conclude that her claim that Titus and the SPPF intentionally pro-

cured Hamline's alleged breach of the Faculty Handbook procedural provisions is plausible.

Because she has failed to allege facts to support the necessary elements of intentional interference with contract, her proposed claim could not withstand a Rule 12(b)(6) motion to dismiss. Allowing the amendment would be futile and therefore will be denied.

### D. Proposed Claim for Promissory Estoppel against Hamline University

Count IV of Magee's Proposed Amended Complaint asserts a cause of action against Hamline for promissory estoppel. Magee asserts that "[i]f the employment contract described in this complaint is found not to be a contract, Magee alleges in the alternative that clear and definite promises were made to her in the language of the Handbook" and that she reasonably relied on those promises. (PAC ¶¶ 137–39.) Hamline argues that the claim is futile because Magee has not sufficiently identified a clear and definite promise.

Promissory estoppel is an equitable doctrine that "implies a contract in law where none exists in fact." *Martens v. Minn. Mining & Manufacturing Co.*, 616 N.W.2d 732, 746 (Minn.2000). The elements of a claim for promissory estoppel are: (1) the defendant made a clear and definite promise; (2) the defendant expected or reasonably should have expected the promise to induce definite and substantial action by the plaintiff; (3) the promise induced such action; and (4) the promise must be enforced to avoid injustice. *See Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 372 (Minn.1995).

Here, Magee has not sufficiently pleaded the elements of a promissory estoppel claim. Although Magee identifies "the language of the Handbook," her reference

to the Handbook as a whole is vague and insufficient to put Hamline on notice as to the "clear and definite promises" at issue. Further, Magee has not alleged how she relied on any promises or how Hamline intended to induce reliance. Finally, Magee has not even pleaded the final element of a promissory estoppel claim, that the promises must be enforced to avoid injustice. Because Magee's allegations amount to only an incomplete recitation of the elements of the cause of action, the promissory estoppel claim would not survive a motion to dismiss. Amendment to add the claim would be futile and is denied.

### E. Proposed Claim for Violation of Duty of Good Faith and Fair Dealing against Hamline University

Count V of Magee's Proposed Amended Complaint asserts a cause of action against Hamline for "Good faith and fair dealing." Magee asserts that Hamline had a duty to act in good faith in performance of its contract with her and that Hamline breached that duty by acting dishonestly in creating a "sham and pretextual process" with respect to the termination proceedings. (PAC ¶¶ 143–48.) Hamline argues that the proposed claim is futile because it is not recognized under Minnesota law.

Minnesota law does not recognize an implied duty of good faith and fair dealing in employment contracts. *Brozo v. Oracle Corp.* 324 F.3d 661, 668 (8th Cir. 2003) (citing *Hunt v. IBM Mid. Am. Employees Fed. Credit Union*, 384 N.W.2d 853, 858 (Minn.1986); *Singleton v. Christ the Servant Evangelical Lutheran Church*, 541 N.W.2d 606, 613 (Minn.Ct.App.1996), *cert. denied*, 519 U.S. 870, 117 S.Ct. 184, 136 L.Ed.2d 123 (1996)). Magee's claim that Hamline breached a duty of good faith and fair dealing therefore fails as a matter of law. Because the claim is futile, amendment to add Count V, "Good faith and fair dealing," is denied.

### F. Proposed Claim for Defamation against Hamline University

Count VI of Magee's Proposed Amended Complaint, although titled "Good faith and fair dealing," asserts a claim for defamation by self-publication against Hamline. Magee alleges that "the basis for discharging Magee as articulated in the faculty jury determination was not the real reason (and was pretext or sham)," that "Magee would need to articulate the faculty jury's determination to any prospective employers," and "Hamline is therefore liable for defamation by self-publication." (PAC ¶¶ 149–52.) Hamline argues that the proposed defamation claim is futile for multiple reasons, including that the claim has not been pleaded with sufficient particularity and that Magee cannot establish publication of the statement to a third party.

"To establish a defamation claim, a plaintiff must prove three elements: (1) the defamatory statement is 'communicated to someone other than the plaintiff,' (2) the statement is false, and (3) the statement 'tend[s] to harm the plaintiff's reputation and to lower [the plaintiff] in the estimation of the community.'" *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919–20 (Minn.2009) (quoting *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980)). "A statement is defamatory when it 'tend[s] to injure the plaintiff's reputation and expose the plaintiff to public hatred, contempt, ridicule, or degradation.'" *Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569, 573 (Minn.1987) (quoting *Church of Scientology of Minnesota v. Minnesota State Medical Ass'n Foundation*, 264 N.W.2d 152, 155 (Minn. 1978)). Defamation which affects a "plaintiff in his business, trade, profession, office or calling," is defamation per se and is

"thus actionable without any proof of actual damages." *Stuempges,* 297 N.W.2d at 255.

■■■■■ "Generally, there is no publication where a defendant communicates a statement directly to a plaintiff, who then communicates it to a third person." *Lewis v. Equitable Life Assurances Soc'y of the United States,* 389 N.W.2d 876, 886 (Minn. 1986) (citation omitted). However, the Minnesota Supreme Court has recognized an exception to this rule in circumstances of compelled self-publication. *Id.* at 888. The doctrine of compelled self-publication provides that the originator of the defamatory statement is liable for damages caused by the statement, where the originator knew or should have known that the defamed person would be compelled in certain circumstances to publish the statement. *Id.*

■■■■■ A plaintiff must plead and prove a defamation claim with a certain degree of specificity, including pleading who made the alleged defamatory statement, to whom the statements were made, and where the statements were made. *Pope v. ESA Servs., Inc.,* 406 F.3d 1001, 1011 (8th Cir.2005) (citation omitted); *Pinto v. Int'l Set, Inc.,* 650 F.Supp. 306, 309 (D.Minn.1986). Minnesota law generally requires that in defamation suits, the precise words complained of be set forth "verbatim." *Moreno v. Crookston Times Printing Co.,* 610 N.W.2d 321, 326 (Minn. 2000) (citing *American Book Co. v. Kingdom Publ'g Co.,* 71 Minn. 363, 73 N.W. 1089, 1090 (1898)). "[F]ederal courts favor specific pleading of defamation claims because 'knowledge of the exact language

used is necessary to form responsive pleadings.'" *Bauer v. Ford Motor Credit Co.,* No. Civ. 00–389, 2000 WL 34494820, at *3 (D.Minn. June 27, 2000) (quoting *Asay v. Hallmark Cards, Inc.,* 594 F.2d 692, 699 (8th Cir.1979)).

The allegations contained in Magee's Proposed Amended Complaint do not plead her defamation claim with sufficient particularity. Although Magee asserts that the statements complained of "are those found in the Hearing Committee determination," this allegation is not sufficient to allow Hamline to prepare responsive pleadings. The allegation does not identify what portion or language of the Hearing Committee determination is at issue.

In addition, Magee's Proposed Amended Complaint does not adequately allege publication of the statement, which is an essential element of her claim. Magee relies on the doctrine of compelled self-publication and asserts that she "would need to articulate the faculty jury's determination to any prospective employers," but she does not allege that she has actually been compelled to publish the statement to anyone. The Proposed Amended Complaint contains no facts regarding any third parties to whom the statement has been published.

Because the proposed defamation claim in its current form is not adequately pleaded in these respects, it would not survive a Rule 12(b)(6) motion to dismiss. Therefore, the proposed claim is futile and amendment to add Count VI, defamation by self-publication, is denied.[3]

---

**3.** In the Introduction of Magee's Proposed Amended Complaint, she states that she is bringing a claim of intentional infliction of emotional distress. (PAC at p. 1.) However, that cause of action is mentioned nowhere else in the Proposed Amended Complaint. Therefore, the Court does not consider the motion to amend to include a claim for intentional infliction for emotional distress. If Magee did actually intend to move to amend to assert that claim, it would fail because she has not even pleaded the elements of the cause of action.

### III. *MOTIONS TO DISMISS*

Both Titus and the Hamline Defendants move to dismiss Count I of Magee's Complaint for violation of 42 U.S.C. § 1983. The Hamline Defendants also move to dismiss state law claims for breach of contract and intentional interference with contract.

### A. VIOLATION OF 42 U.S.C. § 1983

Having granted Magee's motion to amend to assert additional factual allegations, the Court will consider the allegations contained in the Proposed Amended Complaint in ruling on defendants' motions to dismiss the Section 1983 claims. Magee asserts that with the additional facts, she has stated a claim to relief that is plausible on its face that Titus and the Hamline Defendants violated Section 1983 by engaging in joint activity with a meeting of the minds to deprive her of her constitutional rights. Titus argues that even with the additional allegations, Magee has not sufficiently alleged that he acted under color of law or in concert with state officials. Similarly, the Hamline Defendants argue that Magee has not sufficiently alleged that they acted in concert with state officials.

As discussed above, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). A defendant in a Section 1983 suit "acts under color of state law when ·he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 49–50, 108 S.Ct. 2250 (internal citation omitted). As noted in *Am. Mfrs. Mut.*

*Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999), "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co.,* 526 U.S. at 50, 119 S.Ct. 977 (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)).

"Although Section 1983 can be used only to remedy deprivation of rights done under the color of law, a private actor can be liable 'under § 1983 for conspiring with state officials to violate a private citizen's right[s]. . . .' " *White v. McKinley,* 519 F.3d 806, 815–16 (8th Cir.2008) (quoting *Dossett v. First State Bank,* 399 F.3d 940, 950 (8th Cir.2005)). In such a case, a plaintiff must establish that the private party was a "willful participant in joint activity with the State or its agents," which deprived the plaintiff of a constitutional right. *Murray v. Wal–Mart, Inc.,* 874 F.2d 555, 558–59 (8th Cir.1989) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). As discussed above, a Section 1983 conspiracy claim requires "a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Miller v. Compton,* 122 F.3d 1094, 1098 (8th Cir.1997) (quoting *Mershon v. Beasley,* 994 F.2d 449, 451 (8th Cir.1993)).

#### 1. *42 U.S.C. § 1983 Claim against Titus*

With regard to the actions of police officers, "it is clear that under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded." *Roe v. Humke,* 128 F.3d 1213, 1216 (8th Cir.1997) (quoting *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (plurality opinion)). As per *Ramirez–Peyro v. Holder,* 574 F.3d 893 (8th Cir.2009), for an official to have acted under color of

law, a sufficient nexus must exist between that official's public position and his harmful conduct. The existence of such a nexus is determined by consideration of the following factors:

> (1) whether the officer was on duty; (2) whether the officer wore a uniform or bore other indicia of state authority such as a badge or gun; (3) whether the officer had access to the victim because of his position as a public official; (4) whether the officer's motivation in acting was personal or official; and (5) whether the officer identified himself as a police officer or claimed to act in a police capacity.

*Ramirez–Peyro v. Holder,* 574 F.3d at 901; *see also Lawrence v. City of St. Paul,* 740 F.Supp.2d 1026, 1047 (D.Minn.2010).

Magee claims that "Titus acted with sufficient nexus to his St. Paul Police officer status to be clothed with the authority of his public position, acted under pretense of law, and there was sufficient nexus between the public position and the harmful conduct." (PAC ¶ 125.) But as discussed above, that is a legal conclusion that is not to be granted an assumption of truth. *Delgado–O'Neil v. City of Minneapolis,* No. 08–4924, 2010 WL 330322 (D.Minn. Jan. 20, 2010) *aff'd,* 435 Fed.Appx. 582 (8th Cir.2011); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Magee appears to rely heavily upon Titus' employment as a police officer and connection to the SPPF to support her claim that Titus was acting under color of state law. But Magee does not allege facts supporting the presence of the relevant factors under *Ramirez–Peyro* in her Proposed Amended Complaint. Magee does not allege that Titus undertook any actions while on duty or while wearing a uniform, badge, or gun. Magee makes no claims that Titus had access to her because of his position as a public official. In fact,

Magee acknowledges that Titus had access to her opinions because she published them in a local newspaper. Magee does not allege that Titus' motivation was official rather than personal. Although she alleges that Titus identified himself as a police officer in his letter to the editor, this fact alone is not enough to support a claim that he was acting under color of law to deprive Magee of her rights. Magee does not allege facts sufficient to support her claim that Titus' actions were made possible by his position within law enforcement or undertaken while acting in an official capacity or while exercising responsibilities pursuant to state law. "Police officers, like everyone else, have personal lives, and what they do in their personal lives is not done under color of state law." *Lawrence v. City of St. Paul,* 740 F.Supp.2d 1026, 1046 (D.Minn.2010). The conduct alleged by Titus requires no state authority; a private actor can respond to a published commentary or contact a University regardless of whether he works as a police officer. Magee's Complaint fails to allege the existence of a sufficient nexus between Titus' public position and his alleged conduct to make plausible a claim he was acting under color of law.

In addition, Magee does not allege sufficient facts to support a claim that Titus was working in joint activity with state officials to deprive Magee of a constitutional right. Magee asserts that Titus had a close relationship with SPPD Chief Harrington. (PAC ¶ 24.) But suggesting that two people had the opportunity to conspire "is obviously not sufficient to 'nudge' a conspiracy claim 'across the line from conceivable to plausible.'" *Lawrence v. City of St. Paul,* 740 F.Supp.2d 1026, 1050 (D.Minn.2010) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). Magee also alleges that "[u]pon information and belief Titus was successful in obtaining assistance from [ ] police officers and/or the Depart-

ment" to boycott Hamline and that "upon information and belief . . . from that point forward the [SPPD] did not enter into contracts with Hamline." (PAC ¶¶ 32, 127.) But Magee has not alleged that the SPPD previously entered into contracts with Hamline or that the SPPD failed to enter into any particular contract with Hamline as part of a scheme with Titus to deprive Magee of constitutionally-guaranteed rights. Further, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality . . . ." *Id.* at 1050–51 (quoting *Twombly*, 550 U.S. at 556–57, 127 S.Ct. 1955). There are no specific factual allegations suggesting that Titus conspired with the City of St. Paul or the SPPD.[4]

To bolster her claim that Titus worked in concert with state officials, Magee asserts that Titus operated "by and through the [SPPF]" when it allegedly declared a boycott against Magee. (PAC ¶ 17.) But, as discussed above, the SPPF is a police union, not a state actor. Titus' involvement with the police union does not constitute concerted efforts with state officials. In sum, Magee's complaint "does not contain 'enough factual matter (taken as true) to suggest that an agreement was made" between Titus and a state actor. Finally, as discussed below, Magee has failed to plead facts sufficient to make plausible a

claim that Titus conspired with the Hamline Defendants.

Magee's PAC fails to cure the deficiencies identified in her original complaint. Despite numerous additional allegations, Magee offers insufficient facts to raise a right to relief above the speculative level that Titus deprived her of her constitutional rights while working under color of state law or in concert with state officials. Without sufficient facts to support these elements, Magee's Section 1983 claim does not withstand Rule 12(b)(6) scrutiny. The Court recommends that Magee's claim against Titus be dismissed.

### 2. *42 U.S.C. § 1983 Claim against Hamline Defendants*

In her Proposed Amended Complaint, Magee alleges that Hamline and Lewis "were willful participants in Titus' and the SPPF's boycott and other retaliation against Magee for her speech/viewpoint." (PAC ¶ 125.) Thus, Magee brings claims against Hamline and Lewis, although they are private actors, for participating in joint activity with Titus, who she alleges is a state actor. (*Id.* at ¶¶ 125, 127.) Magee argues that e-mail communications between Titus and Lewis, specifically an e-mail from Titus to Lewis in which Titus "called attention to his boycott and urged Hamline to take punitive action against Professor Magee and remove her from the classroom" and a reply from Lewis to Titus "informing Titus that he needed to pursue a set procedure in order to termi-

---

**4.** Although Magee argues that "[w]e are clearly dealing with a boycott by public officials of the School" like in *Kinney v. Weaver,* 367 F.3d 337 (5th Cir.2002), the facts of *Kinney* are clearly distinguishable from the facts pleaded by Magee. In *Kinney,* police chiefs and sheriffs in several counties allegedly agreed not to enroll their student-officers in classes taught by two instructors at the local police academy where the police departments had traditionally sent their officers for official training, purportedly in retaliation for the instructors' un-

favorable expert witness testimony. The plaintiff instructors brought suit against the individual police chiefs and sheriffs and the municipalities involved. The police chiefs' and sheriffs' actions in *Kinney* were performed in the course of their official duties and there was not even a discussion in the case of whether the actions were undertaken under "color of law." Rather, the question was whether the individual police chiefs and sheriffs were entitled to qualified immunity.

nate Professor Magee" (*see* PAC ¶¶ 49–50), are sufficient to state a plausible claim of joint action between Titus and the Hamline Defendants.

In order to hold a private party liable under Section 1983, a plaintiff must establish that the private party was a "willful participant in joint activity with the State or its agents" in depriving the plaintiff of his constitutional rights. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The Court has already determined that the Proposed Amended Complaint does not state sufficient facts to make plausible a claim that Titus or the SPPF were acting under color of state law. Because Magee has not successfully pleaded a Section 1983 claim against either Titus or the SPPF as state actors, a claim that the Hamline Defendants violated Section 1983 by acting in joint activity with Titus or the SPPF similarly fails. For this reason, Magee's Proposed Amended Complaint does not sufficiently plead a claim for violation of Section 1983 against the Hamline Defendants.

Even if Magee had pleaded facts from which the Court could conclude that a Section 1983 claim against Titus or the SPPF was plausible, her claim against the Hamline Defendants would still fail because she has not adequately alleged joint action of the Hamline Defendants in conspiracy with Titus or the SPPF to violate Magee's rights. The 2009 e-mail exchange between Titus and Lewis is alone insufficient to create a plausible claim that the Hamline Defendants conspired with Titus or the SPPF to terminate Magee's employment. *See, e.g., Lawrence v. City of St. Paul*, 740 F.Supp.2d 1026, 1050 (D.Minn. 2010). Magee has not otherwise alleged a factual basis to support a willful, joint conspiracy among the defendants or between any defendant and a state actor to violate Magee's constitutional rights. Magee does not allege that Titus was involved in any way in the de-tenure proceedings that took place in 2011. Her conclusory allegations that the Hamline Defendants "were willful participants" in Titus' "retaliation against Magee" are insufficient to plead a claim under Section 1983. Because Magee fails to plead facts to establish any plausible claim that the defendants joined together in a conspiracy, with a mutual understanding and meeting of the minds, to deprive Magee of constitutionally-guaranteed rights, the Court recommends that her Section 1983 claim be dismissed.

## B. STATE LAW CLAIMS

The Hamline Defendants have also moved to dismiss the state law claims against them in the original Complaint: Count II (Intentional Interference with Employment Contract against Lewis) and Count III (Breach of Employment Contract against Hamline). However, having recommended dismissal of Count I (Violation of 42 U.S.C. § 1983), the only claim that falls within the court's original jurisdiction, it is recommended that the court decline to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (2006); *Hervey v. County of Koochiching*, 527 F.3d 711, 726–27 (8th Cir.2008); *Barstad v. Murray County*, 420 F.3d 880, 888 (8th Cir.2005). The Court expresses no opinion on the arguments raised by the Hamline Defendants as to the remaining claims. The Court recommends that Counts II and III be dismissed without prejudice.

## *CONCLUSION*

Based upon the record, memoranda, and oral arguments,

I. **IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to File an Amended Complaint [Docket No. 32]

is **GRANTED IN PART AND DE-NIED IN PART as follows:**

a. The motion to add the factual allegations contained in Paragraphs 7 through 123 of the Proposed Amended Complaint is **GRANTED;**

b. The motion is **DENIED** in all other respects, including with respect to the addition of the following claims:

i. Count I (Violation of 42 U.S.C. § 1983) against the St. Paul Police Federation;

ii. Count II (Intentional Interference with Employment Contract) against David Titus and the St. Paul Police Federation;

iii. Count IV (Promissory Estoppel), Count V (Good faith and Fair dealing), and Count VI (Defamation) against Trustees of the Hamline University, Minnesota.

c. Plaintiff shall file an amended complaint consistent with this order on or before October 22, 2012.

II. **IT IS HEREBY RECOMMENDED** that Defendant David Titus' Motion to Dismiss [Docket No. 20] be **GRANTED** and that Plaintiff's Count I (Violation of 42 U.S.C. § 1983) against David Titus be dismissed.

III. **IT IS HEREBY RECOMMENDED** that the Hamline Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 24] be **GRANTED as follows:**

a. That Count I (Violation of 42 U.S.C. § 1983) against the Trustees of the Hamline University and Donald Lewis be dismissed.

b. That Count II (Intentional Interference with Employment Contract against Donald Lewis) and Count III (Breach of Employment Contract against the Trustees of the Hamline University) be dismissed without prejudice.

Dated: October 15, 2012.

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court on or before October 29, 2012.