# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2641

_____

| | | |
|---|---|---|
| Farm Credit Services of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| American State Bank, | * | |
| | * | |
| Appellee. | * | |
| | * | |

_____

Submitted: February 13, 2003

Filed: August 12, 2003  (corrected 8/28/03)

_____

Before WOLLMAN, HEANEY, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

American State Bank ("American") returned twenty-three payable-through drafts to Farm Credit Services of America ("Farm Credit") which were drawn on Farm Credit and payable-through Wells Fargo Bank Nebraska N.A.("Wells Fargo"). Farm Credit filed suit against American for wrongful claim of late return.  In a motion to dismiss, American argued that Farm Credit's complaint was barred by Availability of Funds and Collection of Checks (Regulation CC) 12 C.F.R. Part 229 (2002), which requires the payable-through bank, in this case Wells Fargo, to provide timely notice

of nonpayment.[1] The district court granted American's motion to dismiss and Farm Credit appealed.[2] We affirm.

## I. BACKGROUND

Farm Credit is an instrumentality of the United States pursuant to the Farm Credit Act and has its principal office located in Omaha, Nebraska. American is a financial institution incorporated in Iowa with its principal place of business in Sioux Center, Iowa. Wayne Kooistra maintained accounts at both American and Farm Credit, through which he perpetrated an elaborate check-kiting scheme. Kooistra's use of his accounts resulted in the liability that is the subject of this litigation.

Farm Credit extended Kooistra, and entities owned and controlled by Kooistra, a line of credit to finance his cattle business. Kooistra accessed this line of credit through the use of payable-through drafts which were drawn on Farm Credit and payable through Wells Fargo. To secure this line of credit, Farm Credit maintained a security interest in the cattle and the proceeds from the sale of the cattle.

Kooistra also maintained a checking account in his name at American. This account was used as a clearing account in connection with funds advanced from Farm

---

[1]Before the filing of this suit, American petitioned the district court for a temporary restraining order against both Farm Credit and Wells Fargo prohibiting them from taking action to re-return the drafts to American. Under Federal Reserve Bank rules, American could not refuse to accept the checks as dishonored. Rather, American would have had to incur a loss, then file a lawsuit against Farm Credit for that loss. The drafts were not returned a second time and the suit was dismissed without prejudice.

[2] The Honorable Mark W. Bennett, Chief Judge, United States District Court for the Northern District of Iowa.

Credit. Kooistra deposited Farm Credit drafts representing advances from his line of credit into his checking account at American and then issued checks from his American account to purchase cattle and other assets subject to Farm Credit's security interest.[3] When Kooistra would sell cattle or other interests subject to Farm Credit's security interest, proceeds from the sale would first be deposited into Kooistra's account at American.

On August 22 through August 24, 2001, twenty-three drafts executed by Kooistra, drawn on Farm Credit and payable-through Wells Fargo, were deposited by Kooistra into his American checking account. The drafts at issue total over six million dollars. Kooistra deposited the drafts with American on August 22, 23, and 24, 2001. The daily total for the seven drafts drawn on August 22 was $1,781,116; the daily total for the eight drafts drawn on August 23 was $2,300,499; and the daily total for the eight drafts drawn on August 24 was $2,208,879. American forwarded the drafts to Wells Fargo, and Wells Fargo received the drafts on August 23, 24, and 27, 2001, respectively. Wells Fargo forwarded the drafts to Farm Credit, and Farm Credit received the drafts on August 24, 27, and 28, 2001, respectively. Farm Credit sent the drafts back, en masse, to Wells Fargo, and Wells Fargo received them on August 29, 2001. In turn, Wells Fargo sent the drafts back en masse to American on August 30, 2001. Therefore, American had notice of the return from Wells Fargo on August 30, 2001. This was five, four, and three business days after Wells Fargo had first received the drafts on August 23, 24, and 27, 2001. American returned the drafts to Farm Credit alleging a late return of the items.

Farm Credit filed suit against American asserting three causes of action. First, Farm Credit claimed American made a wrongful claim of late return. Second, Farm

---

[3] American contends the arrangement Farm Credit established with Kooistra was an unusual one for a lender because a lender like Farm Credit would typically require its borrower to use the drafts to pay vendors directly, thereby giving Farm Credit control over the use of its funds.

Credit alleged conversion against American for the wrongful claim of late return. Finally, Farm Credit claimed American was unjustly enriched from the wrongful claim of late return. American moved to dismiss the complaint on separate grounds. American argued the complaint was barred by Regulation CC, 12 C.F.R. Part 229 (2002), because Wells Fargo's notice of nonpayment to American did not comply with the time requirements of the Regulation. In addition, American claimed the complaint was barred by the Uniform Commercial Code ("U.C.C"). Farm Credit opposed the motion to dismiss and argued that compliance with the U.C.C. deadlines was sufficient, that Regulation CC is optional, and that it had the right to make provisional settlements either as a bank or a non-bank drawee.

The district court held that Farm Credit had no basis for a wrongful claim of late return action against American because Wells Fargo did not provide timely notice of nonpayment to American as required by the 4:00 p.m. deadline imposed by 12 C.F.R. § 229.33(a). In addition, the district court rejected Farm Credit's argument that compliance with Regulation CC was optional and that compliance with the U.C.C. midnight deadline was sufficient.

## II. STANDARD OF REVIEW

"We review de novo [the] district court's grant of a motion to dismiss, applying the same standards as . . . the district court." Ballinger v. Culotta, 322 F.3d 546, 548 (8th Cir. 2003); Kottschade v. City of Rochester, 319 F.3d 1038, 1040 (8th Cir. 2003). "All facts alleged in the complaint are taken as true and construed in the light most favorable to the plaintiff." Kottschade, 319 F.3d at 1040. However, like the district court, we are "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." Wiles v. Capitol Indem. Corp., 280 F.3d 868, 870 (8th Cir. 2002).

III. ANALYSIS

The Regulations governing this dispute were promulgated under the 1987 Expedited Funds Availability Act, codified at 12 U.S.C. §§ 4001-4010, which was "designed to accelerate the availability of funds to bank depositors and to improve the Nation's check payment system." Bank One Chicago, N.A. v. Midwest Bank & Trust Co., 516 U.S. 264, 266 (1996). Congress was seeking a way for depositors to access their deposited funds more quickly while at the same time manage the risks banks faced in allowing depositors expedited access to their funds. S. Rep. No. 100-19 (1987), *reprinted in* 1987 U.S.C.C.A.N. 489, 515-17. Ultimately, "[t]o reduce banks' risk of nonpayment, the Act grants the Board of Governors of the Federal Reserve System . . . broad authority to prescribe regulations expediting the collection and return of checks." Bank One Chicago, N.A. v. Midwest Bank & Trust Co., 516 U.S. 264, 267 (1996) (citing 12 U.S.C. § 4008).

The three institutions involved in Kooistra's check-kiting scheme each executed a different role, and thus had different duties under the Regulations. American was the depositary bank, that is, the bank which received the deposits. Farm Credit is the non-bank drawee, from which Kooistra accessed a ready line of credit. As the non-bank drawee, Farm Credit made the ultimate decision whether to honor the drafts.[4] Wells Fargo, the payable-through bank, was the paying bank for

---

[4] Farm Credit argues alternatively that it is a "payor bank", that is, "a bank that is the drawee of the draft," as defined by Iowa Code § 554.4105(3). We agree with the district court that, as a matter of law, Farm Credit was not a bank. The Iowa Code defines bank as "a person engaged in the business of banking, including a savings bank, savings and loan association, credit union, or trust company. Iowa Code § 554.4105(1). Farm Credit was created by the Farm Credit Act, 12 U.S.C. § 2001, *et seq.*, and is consequently authorized to make loans to farmers and to offer related services specifically authorized by the Farm Credit Administration. 12 C.F.R. § 618.8010. Farm Credit does not handle checks for collection, nor does the Farm Credit Act allow Farm Credit to accept demand deposits that may be withdrawn by

purposes of Regulation CC.  <u>See</u> 12 C.F.R. § 229.2(z) ("Paying bank means – (4) The bank through which a check is payable and to which it is sent for payment or collection, if the check is not payable by a bank[.]")[5].  The rationale behind this

check or other similar means.  Farm Credit did not hold demand accounts and could not make provisional settlements of financial instruments.  The mere fact that Farm Credit was engaged in transactions tangentially related to the business of banking does not make them a bank for purposes of the U.C.C.  Farm Credit contends that its allegation that it is within the definition of a payor bank for purposes of the activities at issue, and its description of those activities within the Amended Complaint, provide the necessary allegation to support its claim.  However, that is the brand of pleading we are free to ignore because it is a legal conclusion "cast in the form of factual allegations."  <u>Wiles v. Capitol Indemnity Corp.</u>, 280 F.3d 868, 870 (8th Cir. 2002).

[5]  The Regulations continue:

For purposes of subpart C, and in connection therewith, subpart A, *paying bank* includes the bank through which a check is payable and to which the check is sent for payment or collection, regardless of whether the check is payable by another bank, and the bank whose routing number appears on a check in fractional or magnetic form and to which the check is sent for payment or collection.

12 C.F.R. § 229.2(z).  <u>See also</u> 1 Barkley Clark & Barbara Clark, The Law of Bank Deposits, Collections and Credit Cards ¶ 6.02[2][k][iii] at 6-74 (Rev. Ed. 2002):

Under Reg. CC (12 C.F.R. § 229.36(a)), a draft payable through a bank is considered to be drawn on that bank for purposes of expeditious return and notice of nonpayment of large-dollar items ($2,500 or more). So, if a payable through draft in the amount of $4,500 is presented through the Fed to the payable through bank on Monday, the bank must send notice of nonpayment so that it can be received by the bank of first deposit by 4:00 p.m. on the second business day following the banking day on which it was presented through the Fed.  Similarly, the item itself must be returned under the two-day/four-day deadlines of 12 C.F.R. § 229.30.  However, even though the payable through bank is treated as

treatment is to speed the return of checks that are payable-through a bank to the depositary bank:

> For purposes of Subpart C, the regulation defines a payable-through or payable-at bank (which could be designated the collectible-through or collectible-at bank) as a paying bank. The requirements of § 229.30(a) and § 229.33 are imposed on a payable-through or payable-at bank and are based on the time of receipt of the forward collection check by the payable-through or payable-at bank. This provision is intended to speed the return of checks that are payable through or at a bank to the depositary bank.

12 C.F.R. Part 229, App. E, XXII(A)(1). The commentary to the Regulations goes on to explain:

> Allowing the payable-through bank additional time to forward checks to the payor and await return or pay instructions from the payor would delay the return of these checks. . . . Subpart C places on payable-through and payable-at banks the requirements of expeditious return based on the time the payable-through or payable-at bank received the check for forward collection.

12 C.F.R. Part 229, App. E, II(Z)(2).

The thrust of Regulation CC, therefore, is to expedite the processing of financial instruments and give depositors access to their money. To protect the

---

the paying bank for purposes of the Reg. CC duties, that may not be the case with respect to the midnight deadline under the UCC because the Code treats the payable through bank as a collecting bank, not the paying bank. As a collecting bank, the payable through bank has a basic duty to handle the items with due care under UCC § 4-202.

(footnotes omitted).

parties involved and to reduce the liabilities, deadlines relative to the processing of the financial instruments are imposed on the depositary bank and the paying bank. Specifically, the payable-through bank must provide the depositary bank with notice of nonpayment of the draft by 4:00 p.m. on the second business day following the banking day on which the check was presented. The Regulation states:

> If a paying bank determines not to pay a check in the amount of $2,500 or more, it shall provide notice of nonpayment such that the notice is received by the depositary bank by 4:00 p.m. (local time) on the second business day following the banking day on which the check was presented to the paying bank. If the day the paying bank is required to provide notice is not a banking day for the depositary bank, receipt of notice on the depositary bank's next banking day constitutes timely notice. Notice may be provided by any reasonable means, including the returned check, a writing (including a copy of the check), telephone, Fedwire, telex, or other form of telegraph.

12 C.F.R. § 229.33(a).

In addition to the notice of nonpayment requirement, the payable-through bank must return the check in such a way that the bank of first deposit would normally receive it by 4:00 p.m. two business days after presentment if the paying bank is located in the same check processing region as the depositary bank or, in the alternative, the fourth business day if the paying bank is not located in the same check processing region as the depositary bank. Because Wells Fargo and American are not in the same check processing region, the four day test is applicable and it states:

> A paying bank returns a check in an expeditious manner if it sends the returned check in a manner such that the check would normally be received by the depositary bank not later than 4:00 p.m. (local time of the depositary bank) of . . . [t]he fourth business day following the banking day on which the check was presented to the paying bank, if the paying bank is not located in the same check processing region as the

depositary bank.

12 C.F.R. § 229.30(a)(1), (a)(1)(ii).  The notice of nonpayment and the expeditious return of the item itself are two separate and independent requirements.  Compare 12 C.F.R. § 229.30(a)(1)(ii) with 12 C.F.R. § 229.33(a). Of course, as the Regulation indicates, the returned check itself may be used to fulfill the notice requirement as long as it meets the 12 C.F.R. § 229.33(a) deadline.  See 12 C.F.R. § 229.33(a).

The Clark treatise on The Law of Bank Deposits explains the mechanics of these requirements:

> In addition to extending the UCC midnight deadline by one day, Regulation CC has two of its own requirements relating to the return of dishonored checks: (1) The checks themselves must be "expeditiously" returned to the bank of first deposit.  This usually means that the payor bank must return a check such that the bank of first deposit would normally receive it by 4:00 p.m. two business days after presentment of local checks or four business days after presentment of nonlocal checks. (2) If the check exceeds $2,500, the payor bank must send notice of nonpayment directly to the bank of first deposit so that the bank receives it by 4:00 p.m. on the second business day following the day of presentment.

1 Barkley Clark & Barbara Clark, The Law of Bank Deposits, Collections and Credit Cards ¶ 6.02[2][l] at 6-83 (Rev. Ed. 2002) (footnotes omitted).  The practical effect of a failure to comply with the required notice deadline can be severe.  As the Clark treatise explains, the Regulations contemplate the risks financial institutions face in expediting the availability of funds:

> The notice is much more a centerpiece of Regulation CC than it was under former law.  It should serve to counterbalance the new risks imposed on depositary banks under the mandatory availability schedules of Subpart B.  If the paying bank violates its duty to send notice of a

large-item check within the required time and with the required information, loss caused by release of a hold can be shifted from depositary bank to paying bank.

1 id. ¶ 8.04 at 8-13 (footnotes omitted). While the Regulations do not eliminate all the risks, they do place liability on the party that fails to comply:

With respect to the kiting risk, the depositary bank that releases funds to the kiter may be able to stick the paying bank with the loss if the last checks were held beyond the midnight deadline, or because the paying bank violated its new duty of expeditious return, or because it failed to send direct notice of dishonor of the kited checks within the time limits established by the Regulation.

1 id. ¶ 7.22[2][e] at 7-116.

The fighting issue in this case is whether American received proper notice of nonpayment such that Farm Credit can maintain an action for wrongful claim of late return against American. Wells Fargo, the paying bank, had only until 4:00 p.m. of the second business day to provide notice of nonpayment. 12 C.F.R. § 229.33(a). According to Farm Credit's own complaint, Wells Fargo received the drafts on August 23, 24, and 27, 2001. Therefore, Wells Fargo had to provide American with notice of nonpayment no later than 4:00 p.m. on August 27, 28, and 29, 2001, respectively. Notice was not given until the items were returned en masse on August 30, 2001. Farm Credit had an affirmative duty to provide American with notice of nonpayment, and because it did not provide such notice, American properly exercised its rights when it refused the drafts. See 12 C.F.R. 229.33(a) (stating that when a paying bank determines not to pay a check in the amount of $2,500 or more, the bank "shall provide notice of nonpayment . . . ."). The Clark treatise illustrates the situation:

Under Reg. CC (12 C.F.R. § 229.36(a)), a draft payable through a bank

-10-

is considered to be drawn on that bank for purposes of expeditious return and notice of nonpayment of large-dollar items ($2,500 or more). So, if a payable through draft in the amount of $4,500 is presented through the Fed to the payable through bank on Monday, the bank must send notice of nonpayment so that it can be received by the bank of first deposit by 4:00 p.m. on the second business day following the banking day on which it was presented through the Fed. Similarly, the item itself must be returned under the two-day/four-day deadlines of 12 C.F.R. § 229.30. However, even though the payable through bank is treated as the paying bank for purposes of the Reg. CC duties, that may not be the case with respect to the midnight deadline under the UCC because the Code treats the payable through bank as a collecting bank, not the paying bank. As a collecting bank, the payable through bank has a basic duty to handle the items with due care under UCC § 4-202.

1 Barkley Clark & Barbara Clark, The Law of Bank Deposits , Collections and Credit Cards ¶ 6.02[2][k][iii] at 6-74 (Rev. Ed. 2002) (footnotes omitted).

The district court properly concluded that the allegations contained in the complaint did not support a claim by Farm Credit against American. Wells Fargo did not comply with the deadline imposed by Regulation CC, 12 C.F.R. § 229.33(a). Therefore, because Wells Fargo failed to comply with the Regulation CC requirements and provide American with the proper notice of nonpayment, Farm Credit cannot establish a basis for a wrongful claim of late return against American.

Farm Credit attempts to avoid the straightforward outcome in this case by collapsing the notice of nonpayment into the return requirements of Regulation CC so that compliance with one will excuse the failure to comply with the other. Under this approach, Farm Credit argues that the return of some of the checks met the four-day test of 12 C.F.R. § 229.30(a)(1)(ii). Specifically, it alleges that the drafts presented to Wells Fargo on August 27, 2001, were timely returned, and thus, as to

those drafts, Farm Credit has a claim against American.[6] American contends this argument is without merit because the obligations of 12 C.F.R. § 229.30 and § 229.33 are cumulative, and compliance with one provision does not excuse failure to comply with the other. As the commentary to the Regulations makes clear, Farm Credit's argument is without merit:

> If a paying bank fails both to comply with this section and to comply with the requirements for timely and expeditious return under § 229.30 and the U.C.C. and Regulation J (12 C.F.R. part 210), the paying bank shall be liable under either this section or such other requirements, but not both. (See §229.38(b).).

12 C.F.R. Part 229, App. E, XIX(A)(4). The four-day test for the return of the checks themselves does not supplant the notice requirement for 12 C.F.R. § 229.33. American was entitled to timely notice of nonpayment under 12 C.F.R. § 229.33(a); return of the drafts beyond the two-day notice deadline but within the four-day return window will not excuse the notice deficiency. Cf. 12 C.F.R. Part 229, App. E, XIX(A)(4) (The commentary states that "[u]nless the returned check is used to satisfy the notice requirement, the requirement for notice is independent of and does not affect the requirements for timely and expeditious return of the check under § 229.30 and the U.C.C." (citation omitted)).

Finally, Farm Credit argues that compliance with Regulation CC was optional and that compliance with the U.C.C. midnight deadline was sufficient. Like the

---

[6]American contends that Farm Credit, in opposing the motion to dismiss, did not attempt to distinguish between Regulation CC's requirements for return of the items, 12 C.F.R. § 229.30, and its requirements for notice of nonpayment, 12 C.F.R. § 229.33, the argument Farm Credit is now making on appeal. American argues the court should not consider Farm Credit's 12 C.F.R. § 229.33 argument because it is raised for the first time on appeal. However, because we agree with American that Farm Credit's argument fails on the merits, we will address the issue.

district court, we find this argument unavailing. Regulation CC provides an additional layer of protection to the U.C.C. framework and compliance with it bolsters the stability, predictability, and integrity the system depends on. In addition, proper and timely notice is a mandatory requirement imposed by Regulation CC. See 12 C.F.R. § 229.33(a) ("If a paying bank determines not to pay a check in the amount of $2,500 or more, it *shall* provide notice of nonpayment . . . .") (emphasis added). As the Clark treatise points out:

> The Fed could have done away with the UCC midnight deadline altogether, viewing the duty of expeditious return as a complete replacement for the more mechanical test of Article 4. However, a decision was made to retain the midnight deadline as an additional incentive for quick return of dishonored checks. Therefore, instead of displacement, we have another example of overlay. Now a payor bank has two duties: (1) to return the check expeditiously under Regulation CC so that it is calculated to reach the depositary bank quickly and (2) to dispatch the check before the midnight deadline under Article 4. Moreover, although a payable through bank has the same expeditious return duties as a paying bank, Regulation CC retains the UCC rule by which a payable through bank is not treated as a payor bank for midnight deadline purposes. The upshot is that the substantial body of case law construing the midnight deadline rules of the UCC will remain in place, often being litigated totally independently of any breach of duty under the federal regulation.

1 Barkley Clark & Barbara Clark, The Law of Bank Deposits, Collections and Credit Cards ¶ 8.14[2][b] at 8-52 (Rev. Ed. 2002) (footnotes omitted).

Farm Credit has failed to establish a claim against American for wrongful claim of late return. The derivative claims of conversion and unjust enrichment necessarily fail as well. Accordingly, the district court properly dismissed the suit.

-13-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.