Filed 7/25/13  Rowley v. U.S. Bank National Assn. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THOMAS D. ROWLEY, | |
| Plaintiff and Appellant, | G047090 |
| v. | (Super. Ct. No. 30-2011-00441143) |
| U.S. BANK NATIONAL ASSOCIATION et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Franz E. Miller, Judge.  Affirmed.

Thomas D. Rowley, in pro. per., for Plaintiff and Appellant.

Bryan Cave, Lawrence P. Ebiner and Jonathan G. Fetterly for Defendants and Respondents.

\*          \*          \*

Plaintiff Thomas D. Rowley appeals a judgment entered in favor of defendants U.S. Bank National Association (U.S. Bank) and U.S. Bancorp.[1] Rowley claims the court erred by granting defendants' motion for summary judgment, declining to consider tardy supplemental opposition papers, and refusing Rowley's request to continue the hearing to permit additional discovery. We affirm.

FACTS

*Procedural History*

In his operative complaint, Rowley, an attorney, alleged U.S. Bank wrongfully dishonored two checks drawn on Rowley's client trust account at U.S. Bank (Account). Rowley averred U.S. Bank's actions resulted in an administrative investigation by the State Bar of California, as well as emotional and physical distress to Rowley. The court sustained defendants' demurrer to Rowley's other causes of action (defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress); Rowley does not appeal this ruling.

Defendants filed a motion for summary judgment on December 22, 2011, noticing the hearing for March 13, 2012. Defendants argued there were insufficient funds available in Rowley's Account at the time the dishonored checks were presented to U.S. Bank for payment, which justified the dishonor of the two checks. Rowley did not file a timely opposition to the motion for summary judgment (i.e., by February 28, 2012). On March 9, 2012, defendants received a letter from Rowley stating he had been

---

[1] U.S. Bank is a wholly-owned subsidiary of U.S. Bancorp, a financial services holding company. U.S. Bancorp does not maintain banking relationships with or provide banking services to individual customers. U.S. Bancorp was named as a defendant as a result of the relationship between U.S. Bank and U.S. Bancorp, not as a result of any acts or omissions that can be attributed to U.S. Bancorp. Thus, if U.S. Bank was entitled to summary judgment, U.S. Bancorp was also entitled to summary judgment.

experiencing medical problems.  Based on this letter, the parties stipulated to a continuance of the summary judgment hearing to April 10, 2012.  In ruling on the summary judgment motion, the court considered Rowley's initial opposition papers, filed on March 29, 2012, but rejected consideration of supplemental opposition papers filed on April 9.

*Undisputed Facts*

The following facts are undisputed, as set forth in defendants' separate statement of material facts and Rowley's responsive separate statement.  (See Code Civ. Proc., § 437c, subd. (b)(1), (3).)  Rowley's separate statement admitted the vast majority of the material facts set forth in defendants' separate statement and did not introduce additional material facts.

Rowley established the Account with U.S. Bank in 2006.  In doing so, Rowley agreed to be bound by a deposit agreement.  The deposit agreement stated Rowley does "not have the right to withdraw funds that exceed the available balance on [his] account."  "U.S. Bank did not have an agreement with [Rowley] to pay overdrafts on the Account."  "U.S. Bank did not have a usual custom or practice of paying overdraft or insufficient funds items on the Account."  The deposit agreement indicated that funds deposited by check would not necessarily be available immediately and that, in certain circumstances (including when more than $5,000 is deposited on a single day), delays of up to nine business days could occur.

The Account balance on January 7, 2010, was $42.49.  On Friday, January 8, 2010, a check drawn on a Bank of America account in the amount of $25,000.00 was deposited into the Account using a counter deposit slip.  The counter deposit slip "bears a handwritten note stating 'Hold.'"  Between January 8, 2010, and January 22, 2010, no additional funds were deposited into the Account.

3

Immediately upon deposit of the $25,000 check, $100 became available, bringing the Account balance to $142.49. U.S. Bank delayed the availability of the additional $24,900. Of this amount, $4,900 was subject to a two business day hold, and was made available on Tuesday, January 12, 2010. The resulting available balance was $5,042.49. Thus, as of January 12, $20,000 had not yet been made available to Rowley by U.S. Bank.

On January 14, 2010, two $2,500 checks payable to Rowley from the Account were presented to U.S. Bank for payment. There were sufficient available funds in the Account, so both checks were paid. The closing available balance on January 14, 2010, was $42.49.

On behalf of his client, Rowley wrote two checks on the Account to Dr. George Rombach, apparently as payment for services rendered in the client's legal matter. On January 15, 2010, California Bank & Trust presented the Rombach checks (both in the amount of $2,500) for payment to U.S. Bank. The available balance in the Account on both January 15 and January 19 was $42.49.[2] U.S. Bank did not pay either of the Rombach checks. U.S. Bank dishonored the Rombach checks on January 19, 2010, by returning them to the "Federal Reserve in San Francisco." On January 22, the Rombach checks "were re-submitted for payment and paid by U.S. Bank."

*Disputed Facts*

In essence, Rowley attempted to dispute two material facts in U.S. Bank's separate statement: (1) Whether an adequate notice of hold on availability was provided by U.S. Bank to Rowley; and (2) the length of U.S. Bank's hold.

---

[2] Note that January 16 and January 17, 2010, were weekend days. January 18, 2010, was a federal holiday. See appendix A for an annotated January 2010 calendar based on the undisputed facts in this case.

As to the first factual issue, Rowley does not dispute that the word "'Hold'" was written on the deposit slip. But Rowley contends (and U.S. Bank implicitly concedes) that mere notice of a nonspecific hold was insufficient. U.S. Bank introduced evidence that, in addition to the generic deposit slip notice, it printed two copies of a document entitled "Notice of Hold," a branch copy and a customer copy. The Notice of Hold (a copy of the branch copy was authenticated and submitted into evidence) states that U.S. Bank was delaying availability of $24,900, with $4,900 available January 12, 2010, and $20,000 available January 20, 2010. The Notice of Hold states that the reason for the hold was that the deposited check was in excess of $5,000. According to a declaration filed by a regional operations manager, "[i]t is U.S. Bank's policy, custom and practice to deliver the customer copy of the Notice of Hold to the person making the deposit at the time of the deposit, and to retain the branch copy of the Notice of Hold."

Rowley purported to dispute each of these facts in his responsive separate statement. Rowley denied he received the Notice of Hold, citing his own declaration. The only pertinent information in Rowley's declaration is an assertion that Rowley never received a notice of hold at any time. But Rowley himself was not the depositor of the $25,000 check. U.S. Bank submitted Rowley's response to its discovery request for production of documents. Those documents included Rowley's letter to the State Bar in which he explained that his client's president, Kenneth Hubbard, had deposited the $25,000 check directly into Rowley's Account. Rowley did not submit a declaration from Hubbard. Rowley claimed in his responsive separate statement that a U.S. Bank branch manager told him there was never any hold placed on the deposited funds. But Rowley's declaration did not support this assertion. And no other evidence was submitted in support of his assertion. There is a short letter with U.S. Bank's letterhead in the record, dated February 8, 2010, and purportedly signed by a branch manager, which states that the $25,000 "should have been available on January 15, 2010, but was placed on hold through January 20, 2010." The branch manager apologized in the letter.

5

But the letter is not authenticated in any fashion, nor was any foundation provided to overcome a hearsay objection; the letter was simply submitted as an exhibit accompanying Rowley's opposition. U.S. Bank filed a written objection and motion to strike this letter on grounds that it lacked foundation, it lacked personal knowledge, it was hearsay, and it was irrelevant.

The second factual issue relates to the length of the hold U.S. Bank actually placed on $20,000 of the deposited funds. Rowley alleged in the operative complaint that U.S. Bank "did not make [$20,000 of the deposited] funds available in Plaintiff's attorney/client trust account until January 22, 2010." U.S. Bank's separate statement established it delayed availability of the $20,000 for seven business days and the $20,000 was made available on January 20, 2010. U.S. Bank referenced the Notice of Hold, the Account statement, and a declaration in which a regional operations manager authenticated and explained these documents. Rowley disputed these facts, citing his own declaration (which does not include any pertinent factual statements) and a reference to his statement history (which does not actually indicate when the funds were available but instead lists transactions). As previously noted, it is undisputed that the Rombach checks were actually paid on January 22, 2010, when the checks were resubmitted for payment.

*Ruling*

The court granted U.S. Bank's motion for summary judgment, ruling that Rowley had not demonstrated the existence of a triable factual issue. The court found that U.S. Bank had applied the correct funds availability procedure under the deposit agreement and applicable law. Rowley was not entitled to personal notice of the hold, as notice only needed to be given to the depositor, and not to the account owner, at the time of deposit.

6

DISCUSSION

*Appellate Review of Summary Judgment*

"We review a grant of summary judgment de novo. [Citation.] We assume the role of the trial court and redetermine the merits of the motion." (*Calemine v. Samuelson* (2009) 171 Cal.App.4th 153, 160-161.) In doing so, we follow a three-step process: (1) identify the issues as framed by the pleadings; (2) evaluate whether the moving party has made a prima facie showing that would support summary judgment; and (3) if the moving party has made a prima facie showing, determine whether the responding party has demonstrated the existence of a triable, material factual issue. (*Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 503; Code Civ. Proc., § 437c, subds. (p)(1), (2).)

"The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment may not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).) A cause of action has no merit if "[o]ne or more of the elements of the cause of action cannot be separately established" or if there is "an affirmative defense to that cause of action." (§ 437c, subds. (o)(1), (2).)

7

*The Availability of Funds Deposited by Check*

Rowley argues U.S. Bank should have honored the Rombach checks. Rowley asserts he had funds available to pay the Rombach checks as a result of the January 8, 2010 deposit of $25,000 into the Account. To address these contentions, we review the terminology and structure of the banking system as it pertains to checks.

"There is a well-defined process for the 'settlement' (payment) of an 'item'" (e.g., a check) under the California Uniform Commercial Code, which also defines the various participants in this process.[3] (*Wells Fargo Bank, N.A. v. FSI, Financial Solutions, Inc.* (2011) 196 Cal.App.4th 1559, 1568-1569 (*FSI*).) Typically, three parties are identified on a check: "'(1) the "drawer" who writes the check, (2) the "payee", to whose order the check is made out, and (3) the "drawee" or "payor bank", the bank which has the drawer's checking account from which the check is to be paid. In form, a check is an order to the drawee bank to pay the face amount of the check to the payee. After receiving the check, the payee typically indorses it on the back in the payee's own name, and then deposits it in the payee's account in a different bank, the "depositary bank".'" (*Mills v. U.S. Bank* (2008) 166 Cal.App.4th 871, 881, fn. 10.)[4]

"When a customer deposits a check drawn on another bank, the customer receives a provisional credit for the amount of the check." (*Symonds v. Mercury Savings & Loan Assn.* (1990) 225 Cal.App.3d 1458, 1464.) The depositary bank, "acting as the customer's agent, then forwards the check to the payor bank or a presenting bank which gives the [depositary] bank a provisional credit." (*Ibid*.; see *FSI*, *supra*, 196 Cal.App.4th at p. 1571 [depositary bank must promptly take proper action to collect

---

[3] All statutory references, unless cited otherwise, are to the California Uniform Commercial Code.

[4] It is possible that the payee has an account at the same bank as the drawer, in which case the depositary bank is the same entity as the payor bank. This possibility does not bear on the facts at issue here.

check to avoid potential liability].)  These initial credits are merely *provisional* settlements; *final* settlement of the check through the check clearing system is not instantaneous.  (See *FSI*, at pp. 1569-1570; *Mills v. U.S. Bank*, *supra*, 166 Cal.App.4th at p. 881, fn. 10 ["'The depository bank credits the check to the payee's account, and sends the check through the check clearing system to the payor bank for ultimate payment from the drawer's account'"].)

The *provisional* settlement of a deposited check does not entail the availability of funds in the payee's account.  As a matter of course, depositary banks place holds on the availability of funds to avoid losing money in those instances in which checks are dishonored by payor banks.[5]  The reason for the delay between the deposit of a check and the final settlement of a check is that the payor bank must be afforded the opportunity to evaluate whether the check should be honored or dishonored.  If the payor bank dishonors the check, the provisional settlements made throughout the chain of banks are reversed.  (*FSI*, *supra*, 196 Cal.App.4th at pp. 1569-1570.)

Here, U.S. Bank is the depositary bank for the $25,000 check deposited on January 8, 2010.  It is the payor bank for the four checks drawn on the Account, including the two checks Rowley wrote to himself and the two Rombach checks.  The legal questions raised by this appeal are:  (1) When was U.S. Bank required to make the $25,000 deposited by Hubbard on January 8, 2010, available for use by Rowley; and (2)

---

[5]     "Some customers assume that when they deposit a check into their account, the check is 'good' immediately and can be drawn against at once.  That is wrong.  Banks usually put a hold (commonly known as Delayed Funds Availability or DFA) on uncollected funds represented by a deposited check.  A bank's hold regulations are usually included in the deposit agreement (either explicitly or by reference), printed on the back of deposit slips, or both.  [¶]  [H]olds are a justifiable and necessary protection for depositary banks.  When a depositary bank allows the customer to draw on uncollected funds, the bank is making a loan to its customer in reliance on the check's ultimate payment . . . ."  (2 White et al., Uniform Commercial Code (6th ed. 2013) The Payor Bank and Its Customer, § 21-4, pp. 536-537.)

9

When and how was U.S. Bank required to evaluate Rowley's account balance in determining whether to honor the Rombach checks?

Federal law answers the first question. The Expedited Funds Availability Act (12 U.S.C., §§ 4001-4010), implemented by Regulation CC (12 C.F.R. §229.1 et seq. (2010)), limits the length of time a depositary bank can place a hold on the availability of funds deposited by a check payee. (See *Oak Brook Bank v. Northern Trust Co.* (7th Cir. 2001) 256 F.3d 638, 639.) "Congress was seeking a way for depositors to access their deposited funds more quickly while at the same time manage the risks banks faced in allowing depositors expedited access to their funds." (*Farm Credit Services v. American State Bank* (8th Cir. 2003) 339 F.3d 764, 768.)

Here, we only need concern ourselves with Regulation CC's treatment of a local check in the amount of $25,000, like the check deposited by Hubbard in Rowley's Account.[6] Assuming no other checks are deposited on the same day, the depositary bank must make the first $100[7] of a $25,000 local check available on the first business day after the banking day on which funds were deposited.[8] (12 C.F.R. § 229.10(c)(1)(vii)(A)

---

[6] The parties dispute whether the $25,000 check was a "local" (12 C.F.R. § 229.2(r), (s) (2010)) or "nonlocal" (12 C.F.R. § 229.2(v), (w) (2010)) check under Regulation CC. Depositary banks have more time to make nonlocal check funds available. (12 C.F.R. § 229.12(b)(1), (c)(1) (2010).) But we need not explore differences between local and nonlocal checks. As explained below, U.S. Bank complied with Regulation CC as a matter of law even assuming the $25,000 check deposited on January 8, 2010 was "local."

[7] Actually, as of July 21, 2010, the law was amended to require banks to make the first $200 available the next business day. (See 12 U.S.C. § 4002(a)(2)(D).) This change in the law is not yet reflected in Regulation CC, however, and was not in effect when Rowley's $25,000 check was deposited on January 8, 2010.

[8] "*Banking day* means that part of any business day on which an office of a bank is open to the public for carrying on substantially all of its banking functions." (12 C.F.R. § 229.2(f) (2010).) "The term 'business day' means any day other than a Saturday, Sunday, or legal holiday." (12 U.S.C. § 4001(3); see also 12 C.F.R. § 229.2(g)

10

(2010).) As for the next $4,900 of the local check, "a depositary bank shall make funds deposited in an account . . . available for withdrawal not later than the second business day following the banking day on which funds are deposited . . . ." (12 C.F.R. § 229.12(b)(1) (2010).) "Sections 229.10(c) and 229.12 do not apply to the aggregate amount of deposits by one or more checks to the extent that the aggregate amount is in excess of $ 5,000 on any one banking day." (12 C.F.R. § 229.13(b) (2010).) In the case of a deposit in excess of $5,000, "the depositary bank may extend the time periods established under §§ 229.10(c) and 229.12 by a reasonable period of time." (12 C.F.R. § 229.13(h)(1) (2010).) "[A] reasonable period is an extension of up to . . . five business days for" local checks in excess of $5,000. (12 C.F.R. § 229.13(h)(4) (2010).) "A longer extension may be reasonable, but the bank has the burden of so establishing." (*Ibid*.)

Accordingly, with regard to the availability of $20,000 out of a $25,000 local check, Regulation CC authorizes a hold of seven business days from the banking day on which the funds were deposited (i.e., an *extension* of five business days beyond the two business days allowed for $4,900). (See also Fin. Code, § 1429, subd. (a)(5) [former Fin. Code, § 867, consistent with Regulation CC as to the treatment of a $25,000 local check].)

As to the second legal question, upon presentment of a check drawing upon one of its customer's accounts, a payor bank "must act promptly to determine whether [the] check should be honored." (*Roy Supply, Inc. v. Wells Fargo Bank* (1995) 39 Cal.App.4th 1051, 1061.)[9] In deciding whether to honor a check, the bank considers the

_____

(2010) [legal holidays include "third Monday in January"].)

[9] Prompt action on the check is action that occurs by the payor bank's "'midnight deadline,'" *i.e.*, "midnight on its next banking day following the banking day on which it receives the relevant item" (§ 4104, subd. (a)(10)). (See *Los Angeles Nat. Bank v. Bank of Canton* (1991) 229 Cal.App.3d 1267, 1275-1276 ["payor bank may revoke a provisional settlement . . . by either returning the check or sending written notice that the check will not be honored" by midnight deadline]; §§ 4301-4302.) "'If the payor

11

availability of funds in the drawer's account and the terms of any agreement between the drawer and payor bank. "A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank." (§ 4401, subd. (a).) "[A] payor bank wrongfully dishonors an item if it dishonors an item that is properly payable, but a bank may dishonor an item that would create an overdraft unless it has agreed to pay the overdraft." (§ 4402, subd. (a).) "A payor bank's determination of the customer's account balance on which a decision to dishonor for insufficiency of available funds is based may be made at any time between the time the item is received by the payor bank and the time that the payor bank returns the item or gives notice in lieu of return, and no more than one determination need be made." (§ 4402, subd. (c).)

Thus, a payor bank may dishonor a check when there are insufficient funds available in the account of the drawer to pay the full amount of the check, unless the payor bank is contractually obligated to provide overdraft protection. Although there is some flexibility as to when a payor bank evaluates whether a check is "properly payable," it must act promptly after presentment of the check, i.e., by its midnight deadline.

*U.S. Bank Properly Dishonored the Rombach Checks*

U.S. Bank came forward with undisputed evidence that it was entitled to judgment as a matter of law. The $25,000 check was deposited into the Account on January 8, 2010. U.S. Bank was obligated to make funds available to Rowley in accordance with the timeline set forth by Regulation CC and in accordance with the

---

bank does not promptly dishonor the check, the provisional settlements throughout th[e] chain of banks become final.'" (*Holcomb v. Wells Fargo, N.A.* (2007) 155 Cal.App.4th 490, 497.)

deposit agreement. U.S. Bank properly made available the first $100 within one business day and $4,900 within two business days. Rowley withdrew $5,000 on January 14, leaving insufficient funds available to pay the two $2,500 Rombach checks. U.S. Bank had seven business days from January 8, a Friday, to make the final $20,000 available under Regulation CC. Seven business days from January 8 was January 20.[10] U.S. Bank submitted evidence showing the $20,000 was made available on January 20, 2010. U.S. Bank did not have a contractual obligation to pay overdrafts on the Account. In sum, U.S. Bank established the Rombach checks were not "properly payable" when presented for payment on January 15 or when dishonored on January 19.

The burden shifted to Rowley to bring forth *evidence* demonstrating the existence of a triable, material issue of fact. He did not meet his burden. Rowley denies the $20,000 was available on January 20, pointing to documents indicating the Rombach checks were not actually honored until January 22, 2010. But the only inference that can reasonably be taken from the record is that the Rombach checks were honored the first time they were resubmitted after January 20. Rowley provides no evidence that shows funds were unavailable between January 20 and January 22.

Rowley also cited the purported statements of a U.S. Bank branch manager apologizing for not making the $20,000 available by January 15, 2010. However, Rowley did not succeed in introducing admissible evidence of these supposed statements (by either testifying to alleged admissions in his declaration or authenticating the letter submitted with the opposition). Defendants objected to and moved to strike this exhibit, raising a variety of meritorious objections under the Evidence Code. It is also immaterial for purposes of deciding the issue before us whether a particular branch manager apologized after the fact to Rowley for what the branch manager perceived to be a

---

[10] January 11, 12, 13, 14, 15, 19, and 20 were business days (i.e., weekdays, not including legal holidays). January 9, 10, 16, 17, and 18 (a legal holiday) were not business days. See appendix A, *post*.

13

mistake. Rowley did not introduce any evidence suggesting U.S. Bank violated the law, or the deposit agreement, by waiting until January 20, 2010, to make the final $20,000 available and by dishonoring the Rombach checks.

*U.S. Bank Provided Proper Notice of the Hold on $20,000*

Rowley also contends that, even assuming the seven business day hold was appropriate, U.S. Bank failed to provide sufficient notice of the hold to Rowley. Under Regulation CC, when the depositary bank applies an exception, including the large deposit exception, it "must provide the *depositor* with a written notice." (12 C.F.R. § 229.13(g)(1) (2010), italics added.) "The notice shall include the following information — (A) A number or code, which need not exceed four digits, that identifies the customer's account; (B) The date of the deposit; (C) The amount of the deposit that is being delayed; (D) The reason the exception was invoked; and (E) The time period within which the funds will be available for withdrawal." (12 C.F.R. § 229.13(g)(1)(i) (2010).) "The notice shall be provided to the *depositor* at the time of deposit" or mailed or delivered "to the *customer* as soon as practicable . . . ." (12 C.F.R. § 229.13(g)(1)(ii) (2010), italics added.)

There is no question U.S. Bank's Notice of Hold contained all of the information required by Regulation CC. The evidence submitted by U.S. Bank establishes this notice was provided to the depositor of the $25,000 check, Kenneth Hubbard. Thus, U.S. Bank shifted the burden to Rowley to provide evidentiary support for his allegation that proper notice was not provided. Rowley brings forth no such evidence. By admitting he was not the person who made the deposit, Rowley disclaimed personal knowledge of circumstances of the depositor's transaction with the bank teller. Rowley did not obtain a declaration from Hubbard denying receipt of the Notice of Hold. So long as it provided the Regulation CC compliant notice to the individual who deposited the check, U.S. Bank had no separate obligation to inform the Account

14

customer, Rowley, of the hold. (See 12 C.F.R. pt. 229H, appen. E, std. 229.13(g)(1)(c) ["For deposits made in person to an employee of the depositary bank, the notice generally must be given to the person making the deposit, i.e., the 'depositor', at the time of deposit. The depositor need not be the customer holding the account. For other deposits, such as deposits received at an ATM, lobby deposit box, night depository, or through the mail, notice must be mailed to the customer not later than the close of the business day following the banking day on which the deposit was made"].)

*The Court Did Not Abuse Its Discretion by Refusing to Consider Supplemental Opposition Papers Filed the Day before the Hearing*

Rowley contends his supplemental opposition, filed on April 9, 2012, the day before the summary judgment hearing, should have been considered by the trial court. The court refused to consider the supplemental opposition.

We review whether the court abused its discretion in denying consideration of late-filed papers. (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 765.) "'An abuse of discretion is never presumed but must be affirmatively established by the party complaining of the provisions of the order. [Citing cases.] The burden is on the party complaining of the order to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice an appellate court will not substitute its opinion and thereby divest the trial court of its discretionary power.'" (*Fontana Paving, Inc. v. Knecht, Garrison & Tait Associates, Inc.* (1965) 238 Cal.App.2d 724, 726.)

"A trial court has broad discretion under rule 3.1300(d) of the California Rules of Court to refuse to consider papers served and filed beyond the deadline without a prior court order finding good cause for late submission." (*Bozzi v. Nordstrom, Inc., supra,* 186 Cal.App.4th 755, 765.) "A hearing on a motion for summary judgment

15

cannot be satisfactorily conducted if neither the court nor the moving party is familiar with the opposing papers." (*Shadle v. City of Corona* (1979) 96 Cal.App.3d 173, 178.)

Rowley does not meet his burden of showing an abuse of discretion. Rowley's supplemental opposition was not filed in a timely fashion as required by California Code of Civil Procedure section 437(c), subdivision (b)(2). Rowley believes the court should have overlooked the supplemental opposition's tardiness because it allegedly showed the $25,000 deposit check was a local check rather than a nonlocal check. However, as discussed above, this distinction is immaterial. U.S. Bank made funds available from the deposit check within the shorter time period set forth by Regulation CC for a local check. We also note defendants and the court previously agreed to continue the hearing date after Rowley failed to file timely opposition to the summary judgment motion. This allowed Rowley to file his initial opposition to the motion, which was considered by the court. The court was well within its discretion in refusing to consider Rowley's last minute filing.

*The Court Did Not Abuse Its Discretion by Denying a Continuance for Discovery*

Finally, Rowley claims the lower court wrongfully denied his request for a continuance (which was made orally at the hearing) to conduct further discovery.

"If it appears from the affidavits submitted in opposition to a motion for summary judgment . . . that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court *shall* deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due." (§ 437c, subd. (h), italics added.)

A court must provide relief to a party opposing summary judgment if a proper showing is made by affidavit. (*Yuzon v. Collins* (2004) 116 Cal.App.4th 149,

16

167.) "Continuance of a summary judgment hearing is not mandatory, however, when no affidavit is submitted or when the submitted affidavit fails to make the necessary showing under section 437c, subdivision (h). [Citations.] Thus, in the absence of an affidavit that requires a continuance under section 437c, subdivision (h), we review the trial court's denial of appellant's request for a continuance for abuse of discretion." (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 254 (*Cooksey*).)

"A declaration in support of a request for continuance under section 437c, subdivision (h), must show: '(1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts. [Citations.]' [Citation.] . . . [Citation.] 'It is not sufficient under the statute merely to indicate further discovery or investigation is contemplated. The statute makes it a condition that the party moving for a continuance show "facts essential to justify opposition may exist."'" (*Cooksey*, *supra*, 123 Cal.App.4th at p. 254.) A lack of diligence in pursuing discovery is a recognized factor supporting the denial of a continuance request. (*Id*. at p. 257.) "A good faith showing that further discovery is needed to oppose summary judgment requires some justification for why such discovery could not have been completed sooner." (*Ibid*.)

While Rowley's declarations (including his late-filed supplemental opposition declaration) explain some of the extenuating circumstances resulting in his failure to zealously pursue discovery before the hearing, Rowley did not meet the requirements outlined in *Cooksey*. Rowley's declarations do not indicate which essential facts he expected to uncover or why he believed he would uncover them. To the extent Rowley asked for a continuance to conduct discovery in his declarations, the tenor of the request is that exploratory discovery needed to occur as to the broad issues implicated by Rowley's allegations. The court did not abuse its discretion.

17

DISPOSITION

The judgment is affirmed.  Defendants shall recover costs incurred on appeal.

IKOLA, J.

WE CONCUR:


FYBEL, ACTING P. J.


THOMPSON, J.

# APPENDIX A: January 2010 Calendar

Note that relevant business days are bold and underlined.

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | **<u>8</u>** $25,000 check deposited; $100 available | 9 |
| 10 | **<u>11</u>** | **<u>12</u>** $4900 available; $20,000 still unavailable | **<u>13</u>** | **<u>14</u>** U.S. Bank pays two checks payable to Rowley (total $5000) | **<u>15</u>** Rombach checks presented for payment (total $5000) | 16 |
| 17 | 18 Federal holiday | **<u>19</u>** U.S. Bank dishonors Rombach checks | **<u>20</u>** U.S. Bank makes remaining $20,000 available | **<u>21</u>** | **<u>22</u>** Rombach checks paid by U.S. Bank | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |  |  |  |  |  |  |